DUBIN et al., Appellants,

v.

SECURITY UNION TITLE INSURANCE CO., Appellee.

[Cite as *Dubin v. Sec. Union Title Ins. Co.*, 162 Ohio App.3d 97, 2005-Ohio-3482.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 85110.

Decided July 7, 2005.

Ulmer & Berne, Christopher M. Steiner, Michael N. Ungar, and David D. Yeagley; Sonkin & Koberna Co., L.P.A., Stephen B. Doucette, Mark R. Koberna, and Rick D. Sonkin, for appellants.

Baker & Hostetler, Ernest E. Vargo, Michael E. Mumford, and Thomas J. Piatak; Cavitch, Familo, Durkin & Frutkin, Alexander E. Goetsch, and Michael C. Cohan, for appellee.

FRANK D. CELEBREZZE JR., Presiding Judge.

{¶ 1} Plaintiffs-appellants, Scott and Hallee Dubin, appeal the trial court's decision denying their motion for class certification. After reviewing the arguments of the parties and for the reasons set forth below, we now reverse and remand the case to proceed with class certification.

{¶ 2} On March 12, 2003, the Dubins filed a class action complaint alleging that defendant-appellee, Security Union Title Insurance Company ("Security Union"), had systematically and illegally overcharged premiums for title-insurance policies in its residential-refinancing transactions. This claim arose from the Dubins' financing of a Beachwood, Ohio home purchased in 1996. Upon buying this home, the Dubins also purchased an owner's policy of title insurance from First American Title Insurance Company, which continues to remain in effect. The

entire purchase was financed through a mortgage loan from Third Federal Savings Bank.

{¶ 3} On December 9, 1998, the Dubins refinanced their home mortgage with Ohio Savings Bank. To protect its interest in the Dubins' property, Ohio Savings purchased a loan policy of title insurance from the appellee, Security Union.

{¶ 4} Title-insurance providers like Security Union charge a one-time fee, or premium, for providing coverage; however, these title insurers offer certain premium discounts. These discounted rates are applied after certain requirements are met, such as when a prior policy might evidence less risk for the insurer. These requirements of the rate rules are written by the title insurers and then filed and approved by the Ohio Department of Insurance.

{¶ 5} The pertinent discounts at bar are the ones offered by Security Union for refinance rates. In the case at bar, the Dubins are alleging that Security Union failed to apply the appropriate discounted premium rate when they refinanced their home in 1998. In addition, the Dubins allege that there are numerous other customers of Security Union who were charged a higher rate than Security Union was entitled to receive.

{¶ 6} On their own behalf, and on behalf of numerous other customers, the Dubins filed a motion for class certification on March 30, 2004. On June 1, 2004, the trial court held a hearing on the motion, and on July 21, 2004, the court issued a judgment entry and opinion denying the motion for class certification. The Dubins now appeal, asserting the following assignment of error:

{¶ 7} "The common pleas court committed reversible legal error and abused its discretion in denying plaintiffs-appellants' motion for class certification."

{¶ 8} In *Baughman v. State Farm Mut. Auto. Ins. Co.* (2000), 88 Ohio St.3d 480, 727 N.E.2d 1265, the Supreme Court of Ohio reaffirmed that the standard of review to be applied to a class-action-certification case is that of an abuse of discretion. A trial court possesses broad discretion in determining whether a class action may be maintained. That determination will not be disturbed absent a showing that the discretion was abused. Id. An abuse of discretion connotes more than an error of law or judgment. It implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Beder v. Cleveland Browns, Inc.* (1998), 129 Ohio App.3d 188, 717 N.E.2d 716.

{¶ 9} In determining whether there was an abuse of discretion on the part of the trial court here, it is relevant to consider the implications of a class-certification proceeding. The class action is an invention of equity. Its purpose is to facilitate adjudication of disputes involving common issues among multiple parties in a single action. *Planned Parenthood Assn. of Cincinnati, Inc. v. Project Jericho* (1990), 52 Ohio St.3d 56, 62, 556 N.E.2d 157. The plaintiff bears

the burden of establishing the right to a class action. *Shaver v. Standard Oil Co.* (1990), 68 Ohio App.3d 783, 589 N.E.2d 1348.

{¶ 10} Class certification in Ohio is based upon Rule 23 of the Ohio Rules of Civil Procedure. The Ohio rule is identical to Rule 23 of the Federal Rules of Civil Procedure. In *Warner v. Waste Mgt., Inc.* (1988), 36 Ohio St.3d 91, 521 N.E.2d 1091, the Ohio Supreme Court set forth seven elements of class certification.

{¶ 11} In determining whether a class action is properly certified, the first step is to ascertain whether the threshold requirements of Civ.R. 23(A) have been met. Once those requirements are established, the trial court must turn to Civ.R. 23(B) to discern whether the purported class comports with the factors specified therein. Accordingly, before a class may be certified as a class action, a trial court must make seven affirmative findings. *Warner*, 36 Ohio St.3d 91, 521 N.E.2d 1091, paragraph one of the syllabus.

{¶ 12} Five prerequisites are explicitly set forth in Civ.R. 23, while two prerequisites are implicit in the Civil Rule. Id. The two implicit prerequisites are (1) that the class must be identifiable and unambiguously defined and (2) that the class representatives must be members of the class. Id. at 96, 521 N.E.2d 1091. The four delineated prerequisites in Civ.R. 23(A) include the following:

{¶ 13} "(1) [T]he class is so numerous that joinder of all members is impracticable[.]

{¶ 14} "(2) [T]here are questions of law or fact common to the class[,]

{¶ 15} "(3) [T]he claims or defenses of the representative parties are typical of the claims and defenses of the class[.]

{¶ 16} "(4) [T]he representative parties will fairly and adequately protect the interests of the class." Id. at 97, 521 N.E.2d 1091, quoting Civ.R. 23(A).

{¶ 17} Finally, the trial court must also find that one of the three Civ.R. 23(B) requirements is met before the class may be certified. Id. at 94, 521 N.E.2d 1091; see, also, *Hamilton v. Ohio Savings Bank* (1998), 82 Ohio St.3d 67, 71, 694 N.E.2d 442. Civ.R. 23(B)(3) requires that the questions of law or fact common to the members of the class predominate over any questions affecting individual members. As stated in *Hamilton*, "Civ.R. 23(B)(3) provides that an action may be maintained as a class action if, in addition to the prerequisites of subdivision (A), the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Hamilton*, 82 Ohio St.3d at 79–80, 694 N.E.2d 442.

{¶ 18} In order to satisfy the predominance requirement, the appellant must show that the common questions of law and fact represent a significant aspect of the class and are capable of resolution for all members of the class in a single adjudication. *Shaver v. Standard Oil Co.* (1990), 68 Ohio App.3d 783, 799, 589 N.E.2d 1348. This court finds that the appellants at bar have sufficiently demonstrated that common questions of law and fact predominate in this case and that the lower court abused its discretion in denying appellants' motion for class certification.

{¶ 19} The lower court, in its judgment entry and opinion, stated the following:

{¶ 20} "The Court finds that class certification is not warranted as common questions of fact do not predominate as required under Civil Rule 23(B)(3). The Court notes that the clear and unambiguous language of Section 9 of the Rate Manual states, as a prerequisite to qualifying for the reissue rate, the insurer must be provided a copy of the prior title insurance policy. This language necessarily requires individualized inquiries involving not only Plaintiffs and Defendant but potentially hundreds of third party independent insurance agents who facilitate the sale of Defendant's title insurance policies. The mere fact that Defendant failed to provide the Plaintiff and potential class members the discounted rate does not support Plaintiffs claims unless and until it is determined on a case by case basis that Plaintiffs and/or an independent third party insurer did in fact provide Defendant with a copy of the prior policy. Common questions of fact do not predominate because each Plaintiffs' claim would involve individualized inquires. *Hoang v. E\*Trade Group, Inc.*, 151 Ohio App.3d 363, 784 N.E.2d 151."

{¶ 21} This ruling by the lower court was improperly based on its determination that the Dubins' claim fails—not procedurally, but on the merits—due to its interpretation of the rating rules and facts. It is well established that a trial court cannot consider the merits of a legal claim in deciding the propriety of class certification. *Ojalvo v. Bd. of Trustees* (1984), 12 Ohio St.3d 230, 12 OBR 313, 466 N.E.2d 875. A trial court is limited to deciding whether the issues and claims asserted would be properly adjudicated through the equitable construct of a class action suit. In the case at bar, the trial court went further than deciding whether the case was proper for class certification and held that the Dubins did not sufficiently show actual injury, stating:

{¶ 22} "The court acknowledges that in 'deciding the propriety of class certification, the trial court must not consider the merits of the case except as necessary to determine whether the Civil Rule 23 requirements have been met.' *Ojalvo v. Board of Trustees* (1984) 12 Ohio St.3d 230, 12 OBR 313, 466 N.E.2d 875. * * * In the case at bar the Court finds that Plaintiffs are not members of the class they seek to represent even assuming the facts alleged in the Complaint

are true. The mere acknowledgment that many customers were not given a discounted rate does not negate some showing that the prerequisite steps necessary to qualify for the discount rate occurred. Without such a showing there is no actual injury upon which a claim can be sustained."

{¶ 23} The trial court here is making meritorious rulings on issues and facts that are in dispute. Furthermore, the trial court's decision on the rating rule is premature. There are yet valid disputes as to whether the language contained in appellee's rate manual, which the trial court rested heavily upon in making its ruling, is in fact clear and unambiguous. Section 9 of the appellee's rate manual reads:

{¶ 24} "When a refinance loan is made to the same borrower on the same land, the following rate will be charged for issuing a policy in connection with the new loan on so much of the amount of the new policy as represents the unpaid principal balance secured by the original loan; *provided the Company is given a copy of the former policy and the amount of the unpaid principal balance secured by the original loan * * *.*" (Emphasis added.)

{¶ 25} The trial court held that language to clearly and unambiguously mean that the consumer, the Dubins in this case, must provide the insurer with a copy of their former policy. The trial court further held that not providing this copy barred the Dubins from recovery. The trial court's ruling in this regard is improper. There are valid disputes as to who must provide the copy of the former policy or the manner in which the policy is to be obtained by Security Union. Whether or not Security Union must first disclose this discounted rate to the customer before it can expect to be provided a copy of any former policy is also in dispute.

{¶ 26} Furthermore, the trial court may have been applying the incorrect rating rule in forming its opinion. Appellants presented evidence that the language of Section 9 was subsequently modified in Section 10 of the rating manual, which was allegedly effective after January 1, 2003, with a ten-year look-back period, and reads:

{¶ 27} "When a refinance loan is made to the same borrower on the same land, the following rate will be charged for issuing a policy in connection with the new loan on so much of the amount of new policy as represents the unpaid balance secured by the original loan; provided the Insurer is *given a copy of the prior policy, or other information sufficient to enable the Insurer to identify such prior policy upon which reissue is requested * * *.*" (Emphasis added.)

{¶ 28} This language, and the question of whether or not it applies, further demonstrates that the trial court's decision was premature. This court finds that there are facts and issues in dispute that demonstrate that the Dubins, as well as

those in the class they wish to represent, may have been injured. These disputed facts and issues should rightfully be determined by a trier of fact and not by the trial court in ruling on a motion for class certification.

█ {¶ 29} The only pertinent issue remaining before this court is whether common questions of law and fact predominate in this case, making it proper for class certification. Upon review of the record and applicable law, we hold that common questions of law and fact do predominate and that class certification is appropriate.

{¶ 30} The Dubins are essentially raising a claim of consumer fraud. They allege that they, and numerous other consumers, were entitled to a discounted rate of refinance and that Security Union systematically and illegally deprived consumers of their entitled discounted rate. In *Cope v. Metro. Life Ins. Co.* (1998), 82 Ohio St.3d 426, 429, 696 N.E.2d 1001, the Ohio Supreme Court held:

{¶ 31} "[T]he United States Supreme Court declared that 'predominance is a test readily met in certain cases alleging consumer or securities fraud * * *' *Amchem Prods., Inc. v. Windsor* (1997), 521 U.S. 591, 117 S.Ct. 2231, 2250, 138 L.Ed.2d 689, 713. As the Supreme Court of California explained in *Vasquez v. Superior Court of San Joaquin Cty.* (1971), 4 Cal.3d 800, 808, 94 Cal.Rptr. 796, 800–801, 484 P.2d 964, 968–969: 'Frequently numerous consumers are exposed to the same dubious practice by the same seller so that proof of the prevalence of the practice as to one consumer would provide proof for all. Individual actions by each of the defrauded consumers is often impracticable because the amount of individual recovery would be insufficient to justify bringing a separate action; thus an unscrupulous seller retains the benefits of its wrongful conduct. A class action by consumers produces several salutary by-products, including a therapeutic effect upon those sellers who indulge in fraudulent practices, aid to legitimate business enterprises by curtailing illegitimate competition, and avoidance to the judicial process of the burden of multiple litigation involving identical claims. The benefit to the parties and the courts would, in many circumstances, be substantial.' "

{¶ 32} The court continued: "It is now well established that 'a claim will meet the predominance requirement when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position.' " Id. at 429–430, 696 N.E.2d 1001, quoting *Lockwood Motors, Inc. v. Gen. Motors Corp.* (D.Minn.1995), 162 F.R.D. 569, 580.

{¶ 33} Here, identical claims run throughout the case for all class members asserted by the appellants. There is "generalized evidence" pertaining to the matter on a class-wide basis. Class members in this case would potentially be all

consumers who were entitled to discounted refinancing rates but were actually charged a higher rate through practices of Security Union. In a similar New York state case, the New York court granted certification of a class consisting of "all persons or entities in New York State who have refinanced their mortgages * * * within ten (10) years * * * and were charged a premium by defendant in an amount in excess of the reduced premium to the applicable loan rate filed." *In re Coordinated Title Ins. Cases* (2004), 2 Misc.3d 1007, 784 N.Y.S.2d 919, 2004 WL 690380, *17.

{¶ 34} Security Union, in opposing class certification here, makes an argument similar to the one the New York court rejected—that the transaction-by-transaction differences between the individual customers and Security Union would cause individual issues to predominate. Id. at *2. In rejecting that argument, the New York court held that it is apparent that the governing laws are broken when the rates that "shall" be charged are not. Id. That court concluded, "In logical terms, it is not plausible to think that a consumer, made aware of the opportunity to save hundreds of dollars, would choose to pay the higher rate and forego a savings mandated by law." Id. at *9.

{¶ 35} The same logic applies to the case at bar. The collective issues of Security Union's practice involving the distribution of its mandated discounted refinance rates predominate over any transaction-by-transaction differences of individual consumers.

{¶ 36} Therefore, this court, after reviewing all the evidence, holds that the trial court abused its discretion in its ruling. As such, the appellants' assignment of error is well taken.

Judgment reversed
and cause remanded.

GALLAGHER and ROCCO, JJ., concur.