975 So.2d 1169 (2008)
COMMONWEALTH LAND TITLE INSURANCE COMPANY, Petitioner,
v.
Kenneth HIGGINS and Deete Higgins, on behalf of themselves and all others similarly situated, Respondents.
No. 1D07-0946.
District Court of Appeal of Florida, First District.
March 6, 2008.
*1171 Mark A. Brown, Joseph Hagedorn Lang, Jr., and Marty J. Solomon of Carlton Fields, P.A., Tampa, for Petitioner.
P. Scott Russell, IV, of P. Scott Russell, P.A., Jacksonville; Stanley M. Grossman, D. Brian Hufford, and Robert J. Axelrod of Pomerantz, Haudek, Block, Grossman & Gross, LLP, New York; and Jeffrey M. Liggio of Liggio, Benrubi & Williams, P.A., West Palm Beach, for Respondents.
VAN NORTWICK, J.
Commonwealth Land Title Insurance Company has filed a petition for writ of certiorari seeking this court's review of an order granting a motion to compel discovery filed by Kenneth E. Higgins and Deete Higgins, respondents and plaintiffs below. The respondents sued Commonwealth on their own behalf and on behalf of a putative class of homeowners, alleging that they were not provided a discounted title insurance rate, known as the "reissue rate," for which they may have been eligible when they refinanced their homes for the period July 1, 1999 to the present. The question presented here is whether the trial court abused its discretion when, prior to a class certification determination, it ordered, in effect, full merits discovery of all "documents concerning, referring or relating to title insurance reissue rates" in the possession of Commonwealth and approximately 1,000 of its independent title insurance agents.[1] We find that Commonwealth introduced uncontradicted evidence demonstrating that the precertification discovery requested is unduly burdensome and will result in irreparable injury at this stage of the litigation; and that the trial court departed from the essential requirements in ordering full merits discovery of the closing files of Commonwealth and its agents. Accordingly, we conclude that the trial court abused its discretion and grant certiorari relief.

Factual and Procedural Background
In their putative class action suit, the respondents raise claims of breach of third party beneficiary contract and unjust enrichment on behalf of themselves and others who did not receive a discounted title insurance reissue rate when they refinanced their home mortgages. Commonwealth *1172 is a title insurance underwriter, licensed to sell title insurance in the State of Florida. See § 627.7711(3), Fla. Stat. (2003). The respondents allege that they were entitled to receive the statutory reissue premium rate for title insurance from Commonwealth, pursuant to section 627.7825(27), Florida Statutes, and Florida Administrative Code Rule 69O-186.003, when they refinanced their mortgage on June 6, 2003.[2] The respondents assert that under section 627.780, Florida Statutes (2003), a title insurance company and its agents are prohibited from deviating from the rates established by Florida law.[3] The complaint alleges that Commonwealth "has a non-delegable duty associated with the sale of title insurance . . . to calculate the correct premium;" that the actions of Commonwealth's agents involved in the sale of title insurance are attributable to Commonwealth; that Commonwealth "systematically failed to train its sales and other agents, employees, apparent agents, and representatives adequately concerning the applicability of the reissue rates that should have been made available to" the respondents and the other members of the class; and that, in the course of conducting title searches on the property of the respondents and other class members, Commonwealth would have learned that the parties were refinancing their mortgages.
*1173 The complaint further alleges that when the respondents purchased their home in 1999 they obtained an owner's title insurance policy from Commonwealth. When they refinanced their mortgage loan in 2003, the new lender obtained a lender's title insurance from Commonwealth under which the respondents were third party beneficiaries. At the time of the 2003 refinancing, the respondents were charged and paid at closing a premium of $1,390.00, which is the full premium based upon the applicable initial loan rate under Florida law. The reissue rate applicable to refinancing of their home, however, was $819.00. Thus, according to the complaint, Commonwealth overcharged the respondents by $571.00 in 2003.
The respondents filed requests for production and sets of interrogatories seeking, among other things, "documents concerning, referring, or relating to title insurance reissue rates." Commonwealth objected to each request and interrogatory and ultimately filed a Motion for Protective Order. In this motion, Commonwealth stated that complying with the discovery requests "would be a monumental task" because Commonwealth has over 1,000 independent agents who issue hundreds of policies each year. Commonwealth further claimed it had "no practicable systematic method for locating such documentation within agents' files because each agent documents its files in its own way, and such documentation is not ordinarily provided by the agent to Commonwealth." Commonwealth further stated:
While Commonwealth recognizes that there is likely some documentation in these files that may be relevant to the class certification issues in this case, the overwhelming burden presented by review of independent agents' files is not justified in light of the relationship between these documents and the burden Plaintiffs bear on their anticipated motion for class certification.
Commonwealth asserted that, although some documents in the agents' files would show that some transactions involved consumers eligible for the reissue rate who were not told of their right thereto, "the individual issues of what unnamed members of the putative class knew and were told overwhelm any common issues in this case" and "this documentation cannot assist Plaintiffs in carrying their burden on class certification" because "Plaintiffs could carry that burden only by demonstrating that there is a method whereby, at trial, they could prove their own case and simultaneously prove the case of each unnamed member of the putative class." Commonwealth concludes, "In other words, only by demonstrating that they do not need these documents could Plaintiffs prevail on the issue of class certification."
In support of its Motion for a Protective Order, Commonwealth introduced an affidavit of the Florida general counsel for Land America Financial Group, Inc., Commonwealth's parent corporation. This affidavit shows that Commonwealth does not maintain the closing files which contain the requested documents. Rather, the files are maintained by 1,073 title insurance agents which are separate, distinct, and independent entities from Commonwealth, including 445 lawyers and law firms in Florida. These agents and the requested documents are located in separate facilities in 168 cities throughout Florida. In response to the discovery request, Commonwealth produced a CD-Rom containing the equivalent of 6,155 pages of Excel spreadsheets detailing the agent number, policy number, policy date, amount of insurance, type of premium (i.e. original or reissue), and amount of premium for each of the 319,744 non-simultaneously issued loan policies from July 1999 (the beginning of the putative class period) through April *1174 2006 (when the data were generated).[4] The affidavit further states that, based on the experience of the affiant in the title insurance industry, the issuance of non-simultaneously issued loan policies "most often suggest[ ] a financing transaction." As a result, the affidavit states that the respondents are seeking production of approximately 319,744 loan closing files in the possession of the independent title agents. The affiant explained that the respondents' loan closing file produced below contains 216 pages of documents, which, in affiant's view, is not unusual in size. Thus, if each of the 319,774 closing files contains an average of 216 pages, the discovery request involves 69,064,704 pages of documents.
The respondents then filed a Motion to Compel Discovery from Defendant. A hearing occurred and, in an order rendered on January 26, 2007, the trial court granted the motion to compel. The subject order directs Commonwealth to "forthwith respond fully and completely to interrogatories and request for production at issue on this motion." The order further provides: "To the extent that information sought can not be derived except by review of paper files, [Commonwealth] may implement alternatives which have been suggested by Plaintiffs through counsel in their discussions and correspondence with [Commonwealth], including producing files to Plaintiffs so that Plaintiffs may review the files themselves." Commonwealth now seeks relief in the form of a writ of certiorari.

Precertification Discovery
Under rule 1.220(d)(1), Florida Rules of Civil Procedure, a court "may order postponement of the determination [of class certification] pending the completion of discovery concerning whether the claim or defense is maintainable on behalf of a class." As a general rule, however, precertification discovery should be limited to matters relevant to class certification, not the merits of the case. Policastro v. Stelk, 780 So.2d 989, 991 (Fla. 5th DCA 2001); see also Baptist Hosp. of Miami v. DeMario, 683 So.2d 641, 643 (Fla. 3d DCA 1996) (granting a petition for certiorari, quashing the trial court's order denying petitioner's motion for protective order, and remanding with directions that the trial court stay merits discovery "pending its determination of [respondent's] standing to serve as the class representative"); and Taran v. Blue Cross Blue Shield of Fla., Inc., 685 So.2d 1004, 1006 (Fla. 3d DCA 1997) (affirming denial of full merits discovery pending determination of plaintiffs' standing, citing Baptist Hosp.).
Further, federal courts have frequently restricted precertification discovery to class certification matters and otherwise limited the scope and burden of such discovery.[5] As a federal court has observed:
Certainly, class determination is preferable before substantial discovery on the merits has been conducted. Where the plaintiffs seek to represent a large national class on a broad spectrum of [issues], discovery can require immense *1175 commitments of time, money and resources and involve innumerable documents and records. Neither party would benefit from such extensive expenditures when it could have been determined in the early stages that a class action was not appropriate or that the class must be more limited in scope than originally alleged by the plaintiffs.
Karan v. Nabisco, Inc., 78 F.R.D. 388, 396 (W.D.Pa.1978); see also Washington v. Brown & Williamson Tobacco Corp., 959 F.2d 1566, 1570-71 (11th Cir.1992) ("To make early class determination practicable and to best serve the ends of fairness and efficiency, courts may allow classwide discovery on the certification issue and postpone classwide discovery on the merits"); Stewart v. Winter, 669 F.2d 328, 331 (5th Cir.1982) ("In light of the mandate of Rule 23(c)(1) that a certification determination be made `(a)s soon as practicable after the commencement of (the) action,' we think it imperative that the district court be permitted to limit pre-certification discovery to evidence that, in its sound judgment, would be `necessary or helpful' to the certification decision."); Grigsby v. North Mississippi Med. Ctr., Inc., 586 F.2d 457, 460 (5th Cir.1978) (district court "acted well within its discretion in circumscribing plaintiffs' request [to class certification matters] to prevent an undue burden on defendants").
We recognize that there is not always a bright line between issues relating to class certification and issues relating to the merits of a claim or defense. See Coopers & Lybrand v. Livesay, 437 U.S. 463, 469 & n. 12, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978) (reasoning that "the class determination generally involves considerations that are `enmeshed in the factual and legal issues comprising the plaintiff's cause of action'" and that "`[e]valuation of many of the questions entering into determination of class action questions is intimately involved with the merits of the claims'" (quoting Mercantile Nat'l Bank v. Langdeau, 371 U.S. 555, 558, 83 S.Ct. 520, 9 L.Ed.2d 523 (1963); see generally, 15 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3911, at 485 n. 45 (1976)). Here, Commonwealth acknowledges that the files sought may contain some information relevant to class certification, although it asserts that discovery of all of the files is not necessary for class certification and is overly burdensome. Especially in the context of precertification discovery, the trial court must balance the need to discover facts relevant to class certification issues with the burdens imposed by the discovery request. To achieve this balance,
[t]he discovery permitted must be sufficiently broad in order that the plaintiffs have a realistic opportunity to meet these [class certification] requirements; at the same time, the defendant must be protected from discovery which is overly burdensome, irrelevant, or which invades privileged or confidential areas. Discovery is not to be used as a weapon, nor must discovery on the merits be completed precedent to class certification.
National Organization for Women, Farmington Valley Chapter v. Sperry Rand Corp., 88 F.R.D. 272, 277 (D.C.Conn.1980) (citation omitted).
The Manual for Complex Litigation provides practical guidance for a court faced with substantial precertification discovery:
Some precertification discovery may be necessary if the allegations in the pleadings  with affidavits, declarations, and arguments or representations of counsel  do not provide sufficient, reliable information. To make this decision, the court should encourage counsel to confer and stipulate as to relevant facts that *1176 are not genuinely disputed, to reduce the extent of precertification discovery, and to refine the pertinent issues for deciding class certification. . . .
* * *
It is often useful . . . to require a specific and detailed precertification discovery plan from the parties. The plan should identify the depositions and other discovery contemplated, as well as the subject matter to be covered and the reason it is material to determining the certification inquiry under Rule 23. . . . If some merits discovery is permitted during the precertification period, consider limits that minimize the time and effort involved, such as requiring the use of questionnaires or interrogatories rather than depositions, and consider limiting discovery to a certain number or a sample of proposed class members.
Manual for Complex Litigation (4th) § 21.14 (2006).
In limiting precertification discovery, courts recognize the cost of compliance that may be imposed on the party responding to discovery. Judge Frank H. Easterbrook has observed that discovery is not only "a tool for uncovering facts essential to accurate adjudication," but also "a weapon capable of imposing large and unjustifiable costs on one's adversary." Frank H. Easterbrook, Discovery as Abuse, 69 B.U.L. Rev. 635, 636 (1989). Since the costs of compliance are usually borne by the responding party, a party making burdensome discovery requests can improve its negotiation position by maximizing those costs. "The prospect of these higher costs leads the other side to settle on favorable terms." Id.

Certiorari Review
Discovery orders granting overbroad, unduly burdensome, or oppressive discovery are traditionally reviewed by certiorari. See Horne v. Sch. Bd. of Miami-Dade County, 901 So.2d 238, 240 (Fla. 1st DCA 2005) ("Orders granting discovery requests have traditionally been reviewed by certiorari because once discovery is wrongfully granted, the complaining party is beyond relief" (citation omitted)); Goodyear Tire & Rubber Co. v. Cooey, 359 So.2d 1200, 1201 (Fla. 1st DCA 1978) (stating "[i]t is well established that interlocutory orders rendered in connection with discovery proceedings may be reviewed by common law certiorari when petitioner can demonstrate that the order complained of does not conform to the essential requirements of law and may cause material injury through subsequent proceedings for which remedy by appeal will be inadequate," and granting certiorari quashing discovery order). Review by certiorari is appropriate when a discovery order departs from the essential requirements of law, causing material injury of an irreparable nature which cannot be remedied on appeal from a final order. Martin-Johnson, Inc. v. Savage, 509 So.2d 1097, 1099 (Fla.1987); see also Allstate Ins. Co. v. Langston, 655 So.2d 91, 94 (Fla.1995). "[A]s a condition precedent to invoking a district court's certiorari jurisdiction, the petitioning party must establish that it has suffered an irreparable harm that cannot be remedied on direct appeal." Jaye v. Royal Saxon, Inc., 720 So.2d 214, 215 (Fla. 1998). Thus, the reviewing court must first conduct a jurisdictional analysis to determine whether the petitioner has made a prima facie showing of the element of irreparable harm. See, e.g., Parkway Bank v. Fort Myers Armature Works, Inc., 658 So.2d 646, 649 (Fla. 2d DCA 1995) (court must first determine jurisdictional requirements of (1) an irreparable injury, (2) that cannot be corrected by plenary appeal, before deciding whether petitioner has shown departure from essential requirements of law); accord Bared *1177 & Co., Inc. v. McGuire, 670 So.2d 153, 156 (Fla. 4th DCA 1996); Beekie v. Morgan, 751 So.2d 694 (Fla. 5th DCA 2000).
In support of certiorari review, Commonwealth argues that the discovery ordered is overly broad and unduly burdensome causing irreparable harm and that the relevance of the requested documents to the class certification issue is not sufficient to justify the burden of attempting to review and produce them at the precertification stage of the litigation.
The uncontradicted evidence in this record establishes that for Commonwealth and the non-party title insurance agents the burden of collecting the requested closing files would be immense. For the 445 attorney title agents, the closing files would be required to be retrieved from storage and attorney-client privileged information in those files would have to be redacted prior to copying or producing the files. Assuming that the 445 attorney agents possess a proportionate share of the closing files, that would require 15 minutes to review each file for privileged information, and that the review could be accomplished by paralegals at a relatively low rate of $50 per hour, the cost of this privilege review alone would be $1,658,675. Finally, assuming a conservative copying cost of 10 cents per page, the cost of simply copying the closing files would exceed $6.9 million.
Florida courts have declined to grant certiorari relief from orders allowing precertification merits discovery where the petitioners have failed to carry the burden of demonstrating that the order will result in irreparable injury. See, e.g., Richardson v. Gyves, 874 So.2d 658 (Fla. 4th DCA 2004); Florida Power & Light Co. v. Thomas, 838 So.2d 1240 (Fla. 1st DCA 2003). Here, however, Commonwealth has amply demonstrated that the appellees' discovery request is unduly burdensome and will result in irreparable injury.
Similarly, in Union Fidelity Life Insurance Company v. Seay, 378 So.2d 1268, 1269 (Fla. 2d DCA 1979), the Second District reviewed an order denying a motion for a protective order on a request for production seeking "all records concerning the denial of coverage for claims filed under a particular policy language, without limitation as to time or as to the number of claims for which records must be produced." The court granted certiorari and quashed the order, stating that "the records requested are 45,000 policies which are stored on computer software in Trevose, Pennsylvania. We find the production of these records to be unduly oppressive and burdensome to petitioner unless further discovery establishes such to be necessary."
Appellate courts in other jurisdictions have limited precertification discovery where the trial court granted discovery broader than necessary to establish the elements for establishing class certification. In Chimenti v. American Express Co., 97 A.D.2d 351, 467 N.Y.S.2d 357, 358 (N.Y.App.Div. 1st Dept.1983), the plaintiff filed a putative class action seeking damages from American Express based upon its alleged misrepresentations and breach of contract for failing to honor the travelers check refund policy allegedly contained in the agreement entered into on purchase of the checks. The trial court certified a class and granted broad discovery. The Appellate Division reversed the class certification and substantially limited the discovery. The court explained:
However, the discovery request approved by Special Term, directing defendant to produce the names and addresses of all potential class members throughout the United States, is unduly broad for the limited purpose of allowing *1178 plaintiff access to proof of numerosity and the existence of a class.
Id. at 359 (citation omitted).
The respondents argue that the burden imposed by the discovery sought here does not warrant certiorari relief, citing Allstate Inc. Co. v. Hodges, 855 So.2d 636, 639-40 (Fla. 2d DCA 2003), and Topp Telecom, Inc. v. Atkins, 763 So.2d 1197, 1199-1201 (Fla. 4th DCA 2000). In Topp, the court held that for the economic cost imposed by a discovery request to constitute an "undue burden," the burden must be so severe that it would "cast the recipient into financial ruin." 763 So.2d at 1200. Thus, "[a]n erroneous order compelling discovery when the cost and effort to do so is burdensome but not destructive is simply not `sufficiently egregious or fundamental to merit the extra review and safeguard provided by certiorari.'" Id. (quoting Haines City Cmty. Dev. v. Heggs, 658 So.2d 523, 531 (Fla.1995)).
Even if we were to agree that the Topp Telecom "financial ruin" test was the correct legal standard to apply generally in certiorari proceedings challenging an order allowing burdensome discovery, an issue we do not address, as the cases discussed above establish, it is not the correct standard to apply at the precertification stage of a putative class action. See Karan v. Nabisco, Inc., 78 F.R.D. at 396; see also In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litigation, 55 F.3d 768, 780 (3d Cir.1995) (noting staging of class certification and merits discovery); Stewart v. Winter, 669 F.2d at 331 ("we think it imperative that the district court be permitted to limit pre-certification discovery to evidence that, in its sound judgment, would be `necessary or helpful' to the certification decision."); Grigsby v. N. Miss. Med. Ctr., Inc., 586 F.2d at 460(district court "acted well within its discretion in circumscribing plaintiffs' request [to class certification matters] to prevent an undue burden on defendants"); Burstein v. Applied Extrusion Techs., Inc., 153 F.R.D. 488, 491 n. 7 (D.Mass.1994) (declining to allow merits discovery during class certification discovery); Rodriguez v. Banco Central, 102 F.R.D. 897, 902-03 (D.P.R.1984) (appropriate for court to limit precertification discovery to the issue of whether the requirements of Rule 23 are met).
The respondents also cite to the decisions of other state and federal courts that have granted class certification in cases, like the case before us, that involve claims relating to an alleged failure to charge a re-issue rate for title insurance sold in a mortgage refinancing transaction. See Cohen v. Chicago Title Ins. Co., 242 F.R.D. 295 (E.D.Penn.2007); Mitchell-Tracey v. United Gen. Title Ins. Co., 237 F.R.D. 551 (D.Md.2006); Dubin v. Sec. Union Title Ins. Co., 162 Ohio App.3d 97, 832 N.E.2d 815 (2005); In re Coordinated Title Ins. Cases, 2 Misc.3d 1007(A), 784 N.Y.S.2d 919 (N.Y.Sup.Ct. Jan. 8, 2004); Mitchell v. Chicago Title Ins. Co., No. CT XX-XXXXXX, 2003 WL 23786983 (Minn.Dist.Ct. Dec. 22, 2003) (unreported decision). These cases, however, do not involve a discovery order entered prior to class certification. In each of these cases, the court has certified the class and is addressing the burden of merits discovery or the manageability of the case given the task of reviewing many thousands of loan and policy transaction files. Thus, we do not find these cases persuasive with respect to precertification discovery issues. Interestingly, although these decisions do not discuss precertification discovery matters, one can infer from these decisions that precertification discovery of the refinancing files short of full merits discovery must have been undertaken to provide the factual basis for class certification.
*1179 Although we grant the petition for writ of certiorari sought by Commonwealth, our decision here does not deny respondents the discovery of the Commonwealth closing files as necessary to establish facts relating to class certification. On remand, the trial court has the discretion to limit discovery to decrease substantially the time, effort and expense involved in responding, including limiting discovery to a certain random sample of the files. See John Randall Whaley, Craig M. Freeman & Richard J. Arsenault, Precertification Discovery: A User's Guide, 80 Tul. L. Rev. 1827, 1878 (2006) ("Where the defendant can prove the exorbitant cost in identifying its customers or insureds, the court may consider a random sampling that provides some information to the plaintiff."). Further, the trial court has the discretion to require the parties to jointly produce a detailed discovery plan "which prioritizes `class' related discovery, while not depriving a plaintiff or defendant from engaging in `merits' discovery when facts and issues are inextricably intertwined . . .;" In Re: Hamilton Bancorp, Inc., Sec. Litigation, No. 01CV0156, 2002 WL 463314 (S.D.Fla. Jan. 14, 2002).
BENTON, J., concurs.
KAHN, J., dissents with written opinion.
KAHN, J., dissenting.
Petitioner, Commonwealth Land Title Insurance Company (Commonwealth), has filed a petition for writ of certiorari seeking this court's review of an order granting Plaintiffs' Motion to Compel Discovery. I would conclude the discovery ordered here does not transgress the restrictive standard governing certiorari review. The discovery is also relevant to the pending issue of class certification. For these reasons, I would deny the petition.

Introduction
In support of its petition, Commonwealth argues (1) "record evidence demonstrates that the discovery ordered is overly broad and unduly burdensome" and (2) "any relevance of these documents to the class certification issue is not sufficient to justify the burden of attempting to review and produce them." "[R]eview by certiorari is appropriate when a discovery order departs from the essential requirements of law, causing material injury to a petitioner throughout the remainder of the proceedings below and effectively leaving no adequate remedy on appeal." Allstate Ins. Co. v. Langston, 655 So.2d 91, 94 (Fla. 1995); see Martin-Johnson, Inc. v. Savage, 509 So.2d 1097, 1099 (Fla.1987). The Florida Supreme Court has explained:
In certiorari proceedings, an order may be quashed only for certain fundamental errors. . . . [N]ot every erroneous discovery order creates certiorari jurisdiction in an appellate court. Some orders entered in connection with discovery proceedings are subject to adequate redress by plenary appeal from a final judgment.
. . . .
. . . . Litigation of a non-issue will always be inconvenient and entail considerable expense of time and money for all parties in the case. The authorities are clear that this type of harm is not sufficient to permit certiorari review. . . . Even when the order departs from the essential requirements of the law, there are strong reasons militating against certiorari review. For example, the party injured by the erroneous interlocutory order may eventually win the case, mooting the issue, or the order may appear less erroneous or less harmful in light of the development of the case after the order.
*1180 Martin-Johnson, 509 So.2d at 1099-1100 (citations omitted).

Discovery Ordered Not Overly Broad and Unduly Burdensome
First, Commonwealth has not shown the discovery ordered is overbroad and unduly burdensome, as those terms are used in Florida law. Commonwealth argues the order creates a "massive" burden for itself and its independent title agents because of the number of files involved (over 319,000), the location of those files ("in more than 2,000 separate facilities in 168 cities across the state belonging to 1,073 separate businesses, approximately 445 of which are lawyers or law firms"), and the "irregularly sized and stapled documents" in the files (which would require a higher photocopying charge). Such burden does not warrant certiorari relief, however, as "[m]ost economic concerns regarding the cost of litigation do not involve the essential requirements of the law or a violation of a clearly established principle of law resulting in a miscarriage of justice." Allstate Ins. Co. v. Hodges, 855 So.2d 636, 639-40 (Fla. 2d DCA 2003); see Topp Telecom, Inc. v. Atkins, 763 So.2d 1197, 1199-1201 (Fla. 4th DCA 2000).
Commonwealth argues the order at issue should be quashed because Commonwealth presented to the trial court uncontradicted evidence (the affidavit of Stacy Kalmanson) concerning the considerable time and expense required by the discovery order. The Fourth District has explained that such a claim would not warrant certiorari review:
Assuming that the objector's evidence in support of the claim of undue burden were legally sufficient and uncontradicted, it is difficult to understand how, even if the order is erroneous, it would rise to the level of irreparable harm. We stress that in this case we deal with a claim that requested discovery is burdensome and unduly onerous. We distinguish the kind of claim made here with an objection contending that the requested discovery would effectively ruin the objector's business. The kind of discovery involved here would simply require unwarranted effort and expense to comply with the request but that burden, though claimed to be inordinate would not cast the recipient into financial ruin. It seems clear to us that the mere fact of unwarranted effort and expense is not, by itself, synonymous with a "departure from the essential requirements of law" [e.s.] for which immediate review is necessary.

Topp Telecom, 763 So.2d at 1199-1200 (underlined emphasis added). The Fourth District went on to explain:
Whether a discovery burden is undue or excessive is usually a function of economics. While we do not denigrate the idea of economic concerns, especially in the world of business and commerce where economic success is the very purpose, we merely stress that most economic concerns do not rise to the level required by Martin-Johnson.

They do not involve the essential requirements of law. They do not involve a "violation of clearly established principle of law resulting in a miscarriage of justice." Combs v. State, 436 So.2d 93, 96 (Fla.1983). The fact that a party may be forced to furnish discovery when the cost to do so is deemed inordinate does not involve a failure "to afford procedural due process" and "whether the circuit court applied the correct law." Haines City Community Development v. Heggs, 658 So.2d 523, 530 (Fla.1995). An erroneous order compelling discovery when the cost and effort to do so is burdensome but not destructive is simply not "sufficiently egregious or fundamental to merit the extra review and *1181 safeguard provided by certiorari." Haines City, 658 So.2d at 531. As important as economic concerns and business disruption are to commercial parties, they are not elementary in the way contemplated by Martin-Johnson.

Id. at 1200-01 (footnote omitted); accord Hodges, 855 So.2d at 641. I note the Topp Telecom court's recognition that a trial court may further address the discovery issue when allocating costs at the conclusion of the case:
Of course the mere fact that a trial judge has allowed burdensome discovery to proceed does not forestall later reallocation of the costs incurred when the prevailing party seeks to tax costs at the end of the case. In taxing costs, the trial judge has considerable discretion and it is certainly within such discretion to determine at the end of the case that overly burdensome discovery requests by the losing party should be compensated to some extent by allowing specific requests for costs incurred thereby. It will be at this stage that the parties can have full review of the issues dealing with the allocation of those costs.
Topp Telecom, 763 So.2d at 1200-01 n. 5. Although some might not necessarily agree with the statement in Topp Telecom concerning the requirement of financial ruin, I note that nothing of that sort was alleged here. In fact, although Commonwealth has posited a dollar amount for compliance, it has not shown the relative financial burden such an expenditure would bear to its overall business.

Discovery Ordered Relevant to Class Certification
Also, Commonwealth has not shown the order at issue improperly allows merits discovery before a class certification determination. "Discovery in civil cases must be relevant to the subject matter of the case and must be admissible or reasonably calculated to lead to admissible evidence." Langston, 655 So.2d at 94. In putative class action cases such as this one, "Florida Rule of Civil Procedure 1.220(d)(1) provides for discovery prior to class certification." Policastro v. Stelk, 780 So.2d 989, 991 (Fla. 5th DCA 2001). The Fifth District has explained, "The rule does not contemplate merits discovery prior to class certification; rather, the rule permits discovery `concerning whether the claim or defense is maintainable on behalf of a class.'" Policastro, 780 So.2d at 991; see Fla. R. Civ. Pro. 1.220(d)(1) ("As soon as practicable after service of any pleading alleging the existence of a class under this rule and before service of an order for pretrial conference or a notice for trial, after hearing the court shall enter an order determining whether the claim or defense is maintainable on behalf of a class on the application of any party or on the court's initiative. . . . In making the determination the court . . . may order postponement of the determination pending the completion of discovery concerning whether the claim or defense is maintainable on behalf of a class.").
In this case, the requests for production and sets of interrogatories sought, among other things, "documents concerning, referring, or relating to title insurance reissue rates." Significantly, in its Motion for Protective Order, Commonwealth conceded that "some of the information contained in the independent title insurance issuing agents' files could lead to the discovery of admissible evidence on the class certification issues in this case." Thus, Commonwealth may not now deny entirely the relevance of the discovery here at issue. Plaintiffs have sought class action status, defining the class as all persons or entities "who refinanced their mortgages or fee interest, between July 1, 1999 and the present, where there has been no *1182 change in the fee ownership and who were charged a title insurance premium in an amount in excess of the reissue premium to which they were entitled." Because "the information sought by respondent is the very information that is needed to determine whether a class action can be maintained," Coastal Physician Services of Broward County, Inc. v. Ortiz, 720 So.2d 324, 326-27 (Fla. 4th DCA 1998), and is thus relevant, as conceded by Commonwealth, the trial court did not depart from the essential requirements of law in ordering its production. See id. (denying petition for writ of certiorari seeking review of order requiring discovery of "[a]ny and all documents, computer records, computer tape or discs or other medium containing information relating or pertaining in any way to any and all persons in every state and country to whom the attached form of document is, was, would have been and/or may have been sent" where the attached document was a form bill for collection of payment for health care services and where plaintiff had requested class action status for lawsuit, alleging that all persons who received this specific billing notice were members of the class).

Other Cases Involving Similar Claim
Finally, I note that other state and federal courts have granted class certification in cases involving the claims of failure to charge a reissue rate in a mortgage refinancing. See Cohen v. Chicago Title Ins. Co., 242 F.R.D. 295 (E.D.Pa.2007); Mitchell-Tracey v. United Gen. Title Ins. Co., 237 F.R.D. 551 (D.Md.2006); Dubin v. Sec. Union Title Ins. Co., 162 Ohio App.3d 97, 832 N.E.2d 815 (2005); Piscioneri v. Commonwealth Land Title Ins. Co., No. 010764/2002, 2 Misc.3d 1007(A), 784 N.Y.S.2d 919, 2004 WL 690380 (N.Y.Sup. Ct. Jan. 8, 2004) (unreported disposition); Mitchell v. Chicago Title Ins. Co., No. CT XX-XXXXXX, 2003 WL 23786983 (Minn.Dist. Ct. Dec. 22, 2003) (unreported decision). These cases do not involve a discovery order prior to class certification. Such distinction, however, is not important, as Commonwealth cannot seriously contend the trial court erroneously allowed merits discovery before class certification, particularly given the concession on relevance.
At least three of those courts explicitly addressed, in the context of manageability, the defense argument that review of individual agent files constitutes a burdensome, unduly difficult, or impossible task. See Cohen, 242 F.R.D. at 301-02; Mitchell-Tracey, 237 F.R.D. at 560; Piscioneri, 2004 WL 690380 at *18. For instance, consonant with the Plaintiffs' position here, the court in Piscioneri stated:
[T]he defense argues that simply identifying members of the putative class is a gargantuan task arguing that the mere managerial tasks of the litigation weigh heavily against certification. The defendants contend that the structure of the mortgage policy premium sales business, and industry methods of record keeping, mean that it would take years to search the policy-holder files to determine eligibility for the reduced rate. In order to even identify the members of the classes defined in plaintiffs' complaints, the files of hundreds of thousands of loan policy transactions will have to be analyzed, and the vast majority of these files are in the hands of title insurance sellers involved in agency relationships with the defendants. Further, defendants assert that even a thorough search of their records would not necessarily clarify which policy holders were entitled to, or did or did not receive the reduced rate.
The record suggests this is not an insurmountable task. . . .
While the process of reviewing all files may indeed be immense, this court is not persuaded that the task cannot be *1183 managed. There is reluctance, here, as well, to halt the pursuit of alleged misconduct affecting a potentially very large number of consumers because of the state of the defendants' records.
2004 WL 690380 at *18. In Cohen, the court stated:
Chicago Title would have this Court believe a class action would be unmanageable because it has no computerized database collecting the policies written by its more than 200 agents in Pennsylvania. Chicago Title argues the normal course of business within the industry make[s] it difficult, if not impossible, to search the policyholder files to determine who may have been eligible for the discounted reissue rate. Title insurance commitments are issued on standard forms provided by Chicago Title and title searches are conducted on a title plant owned by a Chicago Title entity named Fidelity National. Absent some affirmative evidence searches are impossible, this Court may reasonably infer and find a search for affected class members is not impossible.
242 F.R.D. at 302. Lastly, in Mitchell-Tracey, the court stated:
Defendants contend that the structure of the title insurance business and the normal course of business within the industry make it difficult, if not impossible, to search the policyholder files to determine who may have been eligible for the discounted reissue rate. Plaintiffs argue the contrary and assert that the data collection is not only possible, but that the data are readily available and reasonable methods are available to collect the data. I agree with Plaintiffs.
It strains credulity to suggest, as Defendants do, that the Defendants (and their agents) lack the ability to compile information on insurance policies that they have issued, even if those policies have been issued by independent agents. . . . Although the task may prove to be a laborious one, this court is not persuaded that it is one that cannot be reasonably managed, and Plaintiffs plainly are willing to do the work.
237 F.R.D. at 560. The same reasoning applies here.

Conclusion
Petitioner has not met the standard for certiorari review. Although I would deny certiorari, I would not, however, preclude any claims of privilege that may be raised by individual agents. I commend the trial court's effort to allow compliance by measures short of the full production feared by Petitioner. Significantly, the order reserves to Commonwealth the ability to "implement alternatives." Potential cost-reducing measures may include, for instance, sampling of the closing files. See John Randall Whaley, Craig M. Freeman & Richard J. Arsenault, Precertification Discovery: A User's Guide, 80 Tul. L. Rev. 1827, 1878 (2006) ("Where the defendant can prove the exorbitant cost in identifying its customers or insureds, the court may consider a random sampling that provides some information to the plaintiff."). Although such alternatives may exist, short of ultimate production of numerous files, this factor alone does not ripen the order into a candidate for certiorari review. The objects of discovery here are Petitioner's files on the policies sold by Petitioner's agents. Petitioner sold the policies and accepted premiums from the Plaintiffs and others. Petitioner can hardly claim now it cannot produce the policies or non-privileged information contained in the files. I respectfully dissent.
NOTES
[1] Commonwealth's independent title insurance agents are not parties to this action and have not been heard with respect to the respondents' discovery request to produce the agents' closing files.
[2] Section 627.7825, Florida Statutes (2002), provides that "premium rates to be charged by title insurers . . . from July 1, 1999 through June 30, 2002, for title insurance contracts shall be as set forth in [the statute]." Subsection (1) governs original title insurance rates and provides the following prescribed rates:

 Per
 Thousand
From $0 to $100,000 of liability
written $5.75
From $100,000 to $1 million, add $5.00
Over $1 million to and up to $5
million, add $2.50
Over $5 million and up to $10 million,
add $2.25
Over $10 million, add $2.00

Subsection (2) governs reissue rates and provides as follows:
(2) REISSUE RATES. 
(a) The reissue premium charge for owner's, mortgage, and leasehold title insurance policies shall be:

 Per
 Thousand
Up to $100,000 of liability written $3.30
Over $100,000 and up to $1 million,
add $3.00
Over $1 million and up to $10 million,
add $2.00
Over $10 million, add $1.50

The minimum premium shall be $100.
(b) Provided a previous owner's policy was issued insuring the seller or the mortgagor in the current transaction and that both the reissuing agent and the reissuing underwriter retain for their respective files copies of the prior owner's policy or policies, the reissue premium rates in paragraph (a) shall apply to:
1. Policies on real property which is unimproved except for roads, bridges, drainage facilities, and utilities if the current owner's title has been insured prior to the application for a new policy;
2. Policies issued with an effective date of less than 3 years after the effective date of the policy insuring the seller or mortgagor in the current transaction; or
3. Mortgage policies issued on refinancing of property insured by an original owner's policy which insured the title of the current mortgagor.
(c) Any amount of new insurance, in the aggregate, in excess of the amount under the previous policy shall be computed at the original owner's or leasehold rates, as provided in subsection (1) [which provides for original title insurance rates].
Section 627.7825 was repealed, see Chapter 2003-261, § 1978 at 2709, Laws of Florida, and the applicable rates after June 30, 2002 are governed by Florida Administrative Code Rule 690-186.003(2), effective July 1, 2002, which is identical in all material respects to the statute, and remains in force to the present.
[3] Section 627.780(1), Florida Statutes (2003), provides that "[a] person may not knowingly quote, charge, accept, collect, or receive a premium for title insurance other than the premium adopted by the commission."
[4] The record reflects that there is a dispute concerning whether the respondents could access the data on the CD produced by Commonwealth. From the record, the parties appear willing to work together to assure that the respondents could obtain the information on the CD.
[5] Florida Rule of Civil Procedure 1.220 is based on Federal Rule of Civil Procedure 23. Richardson v. Gyves, 874 So.2d 658, 659 (Fla. 4th DCA 2004) (Klein, J., concurring). "When Florida rules of procedure are patterned after federal rules, Florida has a longstanding tradition of relying on federal case law." Id. (citations omitted).