**Pearl E. COHEN, on behalf of herself and all others similarly situated**

v.

**CHICAGO TITLE INSURANCE CO.**

**No. CIV.A.06–873.**

United States District Court, E.D. Pennsylvania.

April 5, 2007.

5. The Court notes that acronyms "RSU" and "SRU" are susceptible to confusion.

David A. Searles, Michael D. Donovan, Donovan Searles, LLC, Philadelphia, PA, Philip S. Friedman, Friedman Law Offices, PLLC, Washington, DC, Richard S. Gordon, Quinn Gordon & Wolf Chtd., Towson, MD, for Plaintiff.

Darryl J. May, Ballard Spahr Andrews & Ingersoll, LLP, Philadelphia, PA, Daniel J.T. McKenna, Ballard Spahr Andrews & Ingersoll, LLP, Voorhees, NJ, for Defendant.

### *MEMORANDUM AND ORDER*

SANCHEZ, District Judge.

Pearl Cohen asks this Court to certify a class of all those mortgagors in Pennsylvania who refinanced and bought a lender's policy from Chicago Title Insurance Co., paying more than Chicago Title's filed rate structure provides. Chicago Title argues lenders' policies are provided by independent brokers, whose records are not assembled in a single

database, making certification of a class legally and factually impossible. Because I find the class meets the requirements of Federal Rule of Civil Procedure 23, I will certify the class.

## FACTS[1]

The facts of the case are straightforward. Cohen re-financed the mortgage on her Philadelphia home in 1999 and purchased title insurance. In 2002, Cohen again refinanced with a $57,600 mortgage and paid Chicago Title $606.75 for title insurance. Chelsea Land Transfer, Inc., an agent of Chicago Title, provided closing and settlement services. As a member of the Title Insurance Rating Bureau of Pennsylvania (TIRBOP), Chicago Title's rates are approved by and filed with the Insurance Commissioner of Pennsylvania and published in the TIRBOP Manual. The TIRBOP Manual lists reissue rates for title insurance issued within 10 years of a previous policy on the same property. The reissue rate is set at 10 percent less than the rate for an original policy. The TIRBOP Manual also sets a refinance rate for policies issued within three years of a previous policy on the same property. The refinance rate is 20 percent less than the reissue rate. Cohen was charged an undiscounted rate for title insurance rather than the refinance rate to which she was entitled. Cohen paid $169.89 more than the TIRBOP Manual rate of $436.86.

The title insurance industry issues two kinds of policies: owner's policies and lenders' policies. An owner's policy protects the buyer from clouds on the title for as long as she owns the property; a lender's policy protects the lender against a challenge to the borrower's title and remains in place only as long as the mortgage remains on record. At settlement for the purchase of real property in Pennsylvania, a buyer typically buys both owner's and lenders' insurance policies. When a property owner refinances her mortgage, the borrower buys only a new lender's insurance policy. Lenders' policies are paid for by the borrower, but are held by and benefit the lending institution.

Cohen alleges Chicago Title deprived thousands of Pennsylvania borrowers of the advantage of a refinance or a reissue rate and asks this Court to certify a class of:

> All persons or entities in the Commonwealth of Pennsylvania who within 10 years of having previously purchased title insurance in connection with their mortgage or fee interest, refinanced the identical mortgage or fee interest, and were charged a title insurance premium by Chicago Title that exceeded the applicable premium discount for title insurance on file with the Pennsylvania Insurance Commissioner that such persons or entities should have been charged.

Pl.'s Proposed Order, ¶ 1.[2]

Cohen's complaint recites three causes of action: money had and received, unjust enrichment, and violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law (UTPCPL).[3] To prevail on a claim for "money had and received," Cohen must show she is entitled to "recover money paid to the defendant … because … the money had been paid by mistake or under compulsion." *Springfield Tp. v. Mellon PSFS Bank,* 586 Pa. 1, 889 A.2d 1184, 1186 n. 2 (2005) (quoting Black's Law Dictionary, at 29 (7th edition)). Cohen's second count, unjust enrichment, sounds in quasi-contract or contract implied in law. *Schott v. Westinghouse Electric Corp.,* 436 Pa. 279,

---

1. The parties have conducted discovery related to class certification. When I view the facts, I look beyond the pleadings and make "[a] preliminary inquiry into the merits [as] is sometimes necessary to determine whether the alleged claims can be properly resolved as a class action." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 259 F.3d 154, 168 (3d Cir.2001).

2. Chicago Title argues the proposed class definition "puts the rabbit in the hat" by referring to the "applicable rate" and who "should have been charged" a discount rate to identify the class. I will re-word the proposed class definition to partially satisfy Chicago Title's objection by omitting the words "that such persons or entities should have been charged." In addition, the proposed wording "premium … that exceeded the applicable premium discount," read literally, would apply to anyone whose premium was more dollars than the discount, which by definition is all premiums.

3. 73 P.S. § 201–2 *et seq.,* Act of December 17, 1968, P.L. 1224, *as amended.*

259 A.2d 443, 448 (1969). Quasi-contracts "are obligations created by law for reasons of justice." *Sevast v. Kakouras*, 915 A.2d 1147, 1153 n. 7 (Pa.2007). Under the UTPCPL, a person who has been victimized by "fraudulent or deceptive conduct," 73 P.S. § 201–2(4)(xxi),[4] has a private right of action and may be entitled to treble damages. 73 P.S. § 201–9.2.[5]

## DISCUSSION

A class is properly certified when a "discrete legal question ... applies in the same manner to each member of the class." *J.B. v. Valdez*, 186 F.3d 1280, 1289 (10th Cir. 1999). Class relief is "peculiarly appropriate" when the "issues involved are common to the class as a whole" and when they "turn on questions of law applicable in the same manner to each member of the class." *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 155, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) (holding it was error to presume a plaintiff's claim was typical of other claims). A class action "saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23." *Falcon*, 457 U.S. at 155, 102 S.Ct. 2364.

To proceed as a class representative, Cohen must satisfy the requirements of Federal Rule of Civil Procedure Rule 23(a) and (b).[6] The Court may certify a class when "the

---

4. The definition of "[u]nfair methods of competition and unfair or deceptive acts or practices," includes "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 P.S. § 201–2(4)(xxi).

5. Private actions
(a) Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action to recover actual damages or one hundred dollars ($100), whichever is greater. The court may, in its discretion, award up to three times the actual damages sustained, but not less than one hundred dollars ($100), and may provide such additional relief as it deems necessary or proper. The court may award to the plaintiff, in addition to other relief provided in this section, costs and reasonable attorney fees.
(b) Any permanent injunction, judgment or order of the court made under section 4 of this act shall be prima facie evidence in an action brought under section 9.2 of this act that the defendant used or employed acts or practices declared unlawful by section 3 of this act.
73 P.S. § 201–9.2.

6. Rule 23 provides:
(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
(1) the prosecution of separate actions by or against individual members of the class would create a risk of
(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action ....
Fed.R.Civ.P. Rule 23

class is too numerous to permit joinder; there are questions of law or fact common to the class; plaintiff's claims are typical of the claims of the class; and plaintiffs will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a). These requirements are generally referred to as numerosity, commonality, typicality, and adequacy.

■ A class does not need a magic number of claimants to satisfy the numerosity requirement, nor must Cohen allege the exact number or identity of the class members. *Cumberland Farms, Inc. v. Browning–Ferris Industries, Inc.*, 120 F.R.D. 642, 645 (E.D.Pa.1988). Courts are permitted to "accept common sense assumptions" about the numerosity requirement. *In re Linerboard Antitrust Litig.*, 203 F.R.D. 197, 205 (E.D.Pa.2001). Chicago Title from 2000 to 2005 underwrote 97,760 title insurance policies at the basic rate for $118,566,591 in premiums. In the same time period, Chicago Title wrote 44,298 policies at the reissue rate and 15,660 policies at the refinance rate. Cohen argues, based on statistics regarding mortgage refinancing for the period, as many as 90 percent of the insureds at the basic rate should have received the reissue or the refinance rate. Based on these statistics, the numerosity requirement of Rule 23(a)(1) is satisfied.

■ The commonality prong requires Cohen to share at least one question of fact or law with the prospective class. *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir.1994). All the facts and legal questions of Cohen's complaint are shared by the putative class members: whether Chicago Title and its agents negligently or deceptively failed to charge the discounted rates for title insurance, whether Chicago Title and its agents were unjustly enriched by the conduct, whether the business practices were deceptive, and whether Cohen and the class members sustained damages. Cohen attributes the failure to charge discounted rates to Chicago Title's failure to supervise or train its agents and to its policy of not requiring reissue or refinance rates. By identifying common issues

of law and fact, Cohen has satisfied the commonality requirement of Rule 23(a).

Typicality requires Cohen's legal theory to coincide with any legal theory advanced on behalf of the class. *Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3d Cir.1985). Typicality prevents conflicts of interest between Cohen and the other class members; thus, "even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories." *Baby Neal*, 43 F.3d at 58. When a defendant engaged in a "common scheme relative to all members of the class, there is a strong assumption that the claims of the representative parties will be typical of the absent class members." *Linerboard*, 203 F.R.D. at 207.

■ Here, each class member will pursue an identical legal theory: Chicago Title failed to supervise, train, or require its agents to charge the refinance or reissue rates for title insurance and, as a result, the class members were overcharged. I do not foresee a conflict between Cohen and other members of the class. Cohen has satisfied the typicality requirement.

■ "The adequacy of the class representative is dependant on satisfying two factors: 1) that the plaintiffs' attorney is competent to conduct a class action; and 2) that the class representatives do not have interests antagonistic to the interests of the class." *Linerboard*, 203 F.R.D. at 207. I find the adequacy requirement satisfied because Cohen's interest is not antagonistic to the class and counsel are experienced consumer class action attorneys.

■ In addition to satisfying the requirements of Rule 23(a), parties seeking class certification must establish the class is manageable under one of the Rule 23(b) categories. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 527 (3d Cir.2004). Cohen seeks certification of the class under Rule 23(b)(1), (b)(2), and (b)(3).[7] Rule 23(b)(1) authorizes the use of class actions when nec-

---

7. Contrary to Chicago Title's assertion at oral argument, Cohen's complaint asserts all three sections of Rule 23(b).

essary to prevent potentially adverse effects of separate actions. Rule 23(b)(2) authorizes class certification when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R.Civ.P. 23(b)(2). This rule applies when the putative class seeks injunctive or declaratory relief, and "does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages." *Id.* Advisory Committee's Note. Under (b)(3), this Court must determine whether "questions of law or fact common to the members of the class predominate over any questions affecting only individual members" and a class action would be "superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). In determining whether a class satisfies the requirement of Rule 23(b)(3), a court should consider:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in a particular forum; and (D) the difficulties likely to be encountered in the management of a class action.

*Id.* In this case, no class member has a greater or lesser interest than Cohen in controlling the litigation, no other litigation against Chicago Title has been initiated in Pennsylvania, this Court is an able and appropriate forum, and the difficulties identifying the class members and computing damages, are manageable. The size of the class and the need for individual damages calculations is not a reason to deny class certification. *In re Community Bank of Northern*

*Virginia,* 418 F.3d 277, 305–06 (3d Cir.2005). The Third Circuit reasons individual suits represent "a potentially great strain on judicial resources." *In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions,* 148 F.3d 283, 316 (3d Cir.1998).

One court described a similar case as:

> This is precisely the kind of case that class actions were designed for, with small or statutory damages brought by impecunious plaintiffs who allege similar mistreatment by a comparatively powerful defendant, one that, if the fact alleges were proved, otherwise might get away with piecemeal highway robbery by committing small violations that were not worth the time and effort of individual plaintiffs to redress or were beyond their ability or resources to remedy.

*Van Jackson v. Check 'N Go of Illinois, Inc.,* 193 F.R.D. 544, 547 (N.D.Ill.2000). Cohen's claim and those her fellow class members are, at best, a few hundred dollars; Chicago Title's alleged profits are in the millions, making this appropriate for class certification.

Chicago Title offers a 57–page laundry list of objections to the class certification, including re-arguing an issue this Court rejected in Chicago Title's Motion to Dismiss: aggrieved insurance purchasers should present their claims to the Insurance Commissioner.[8]

Chicago Title also argues Cohen is not a beneficiary of the title insurance at issue because the lender's policy protects the lender and not Cohen. This argument fails because Cohen paid for the policy and could not have received re-financing without it.

Chicago Title argues either Cohen is not typical of the class or the class as a whole is ineligible for the discounted rates because Cohen failed to present evidence of previous insurance, as required by section 5.3, but not by 5.6, of the TIRBOP manual. The infor-

---

**8.** Chicago Title has filed a Motion to Stay proceedings in this case until the Third Circuit decided *Slapikas v. First American Title Insurance Co.,* No. 07–8017 (3d Cir.2007). *Slapikas* is a case in the Western District of Pennsylvania in which the District Court certified a question to the Third Circuit to determine whether the statutory remedy is discretionary or mandatory. By Memorandum and Order on June 5, 2006, I found the statutory remedy of appeal to the Insurance Commissioner was not the exclusive means of redress and allowed the case to go forward over a strong Motion to Dismiss. To preserve the resources of the Court, after certifying the class in this case, I will stay further proceedings pending the outcome of *Slapikas.*

mation Cohen was refinancing her mortgage is apparent on the face of the closing document, the HUD–1 statement, which identifies a "mortgage payoff to Homecomings Financial" of $45,746.07. Pl.'s Ex. I. In this aspect, the case is distinguishable from *Madera v. Ameriquest Mortgage Co.*, 363 B.R. 718 (Bankr.E.D.Pa.2007), which found no evidence by which the lender could or should have known of the prior loan. A Chicago Title employee testified the standard title search also reveals previous mortgages on record. Ray Dep. 116:11–13. Cohen received title insurance after Chelsea Land Transfer Inc. provided her with a commitment based on a standard form provided by Chicago Title. The information on that form shows the date and amount of any former mortgage, a mortgage which requires title insurance. If proof of a prior mortgage is required, Cohen has done so in a manner which would be typical of the class because both a title search and a HUD–1 form are necessary for settlement.

Cohen is not representative of the class, Chicago Title argues, because she has already settled a suit, alleging the loan was predatory, against her mortgage broker and lender. Chicago Title argues Cohen has already collected on her UTPCPL claim. The UTPCPL count in this case, however, is premised solely on the rate Chicago Title charged for title insurance, a question not resolved in the prior suit.

Chicago Title cites a Superior Court case for the proposition all the elements of fraud must be met to state a cause of action under the UTPCPL. *Colaizzi v. Beck*, 895 A.2d 36 (Pa.Super.2006). *Colaizzi* quoted the current version of Section 201–2, forbidding "unfair or deceptive acts or practices in the conduct of any trade or commerce," but then cited a pre-amendment case for the proposition that "to establish a violation of this catchall provision, a plaintiff must prove all of the elements of common-law fraud." *Co-*

*laizzi*, 895 A.2d at 39 (citing *Sewak v. Lockhart*, 699 A.2d 755, 761 (Pa.Super.1997)).[9]

Unfortunately for Chicago Title, the action in *Sewak* was filed in 1994 and analyzed the former version of the UTPCPL which did not include "deceptive practices," added by amendment in 1996.[10] The legislature's amendment to the statute affirms the position of the Pennsylvania Supreme Court consumer protection laws must be liberally interpreted. *Creamer v. Monumental Properties, Inc.*, 459 Pa. 450, 329 A.2d 812, 816 (1974) ("[s]ince the Consumer Protection Law was in relevant part designed to thwart fraud in the statutory sense, it is to be construed liberally to effect its object of preventing unfair or deceptive practices"). A policy of not applying published insurance rates, if proven, would satisfy the requirement of a deceptive practice under the UTPCPL, as alleged in Cohen's complaint.

Chicago Title also takes issue with the manageability of the class under Rule 23(b), arguing 23(b)(1)(A) only applies where separate adjudications would result in different standards of conduct and 23(b)(1)(B) only applies to situations in which a decision for one member might establish a precedent which would harm the right of others, such as multiple claims against limited funds. Chicago Title also argues against certification under 23(b)(2) because Cohen seeks money damages, not injunctive relief.

I disagree with Chicago Title and find class certification is appropriate under Rule 23(b)(2) and (b)(3) as the fair and efficient method for adjudication because the essential issues, both factually and legally, are common to the class as a whole and predominate over any individual questions. Any remedy could include both money damages and enjoining the conduct. Class certification promotes "economies of time, effort, and expense" and uniformity of decisions. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 615, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).

**9.** Actually, *Colaizzi* mis-cited *Sewak* by adding the word "all." *Sewak* only required "the elements of fraud," not **all** the elements of fraud. *Sewak v. Lockhart*, 699 A.2d 755, 761 (Pa.Super.1997).

**10.** The Pennsylvania Supreme Court has granted allocatur on the question of whether proof of fraud alone is sufficient to warrant treble damages under the UTPCPL. *Schwartz v. Rockey*, 908 A.2d 267, 267 (Pa.2006).

Chicago Title would have this Court believe a class action would be unmanageable because it has no computerized database collecting the policies written by its more than 200 agents in Pennsylvania. Chicago Title argues the normal course of business within the industry make it difficult, if not impossible, to search the policyholder files to determine who may have been eligible for the discounted reissue rate. Title insurance commitments are issued on standard forms provided by Chicago Title and title searches are conducted on a title plant owned by a Chicago Title entity named Fidelity National. Absent some affirmative evidence searches are impossible, this Court may reasonably infer and find a search for affected class members is not impossible. Other courts which have certified classes in identical litigation have found, for instance "[i]t strains credulity to suggest, as Defendants do, that the Defendants (and their agents) lack the ability to compile information on insurance policies that they have issued, even if those policies have been issued by independent agents." *Mitchell–Tracey v. United General Title Ins. Co.*, 237 F.R.D. 551, 560 (D.Md. 2006) (granting class certification to customers of two title insurance companies).

Because I find the four requirements of Rule 23(a) are satisfied and the class is manageable under 23(b), I will certify a class in this case. I am not alone in this decision. In addition to *Mitchell–Tracey*, other courts granted class certification on the same issue presented here. *See Dubin v. Sec. Union Title Ins. Co.*, 162 Ohio App.3d 97, 832 N.E.2d 815, 820–21 (8 Dist.2005) (same); *In re Coordinated Title Ins. Cases*, 2 Misc.3d 1007, 784 N.Y.S.2d 919, 2004 WL 690380, *18; *Mitchell v. Chicago Title Ins. Co.*, 2003 WL 23786983, *8 (Minn.D.C.2003) (granting class certification to purchasers of refinance title insurance from Chicago Title).

An appropriate order follows.

### ORDER

And now this 5th day of April, 2007, Plaintiff's Motion for Class Certification (Document 28) is GRANTED. Pursuant to Federal Rule of Civil Procedure 23 and *Wachtel ex rel. Jesse v. Guardian Life Ins. Co. of Amer-*ica, 453 F.3d 179, 184–88 (3d Cir.2006), this Court makes the following findings of fact regarding numerosity, commonality, typicality, and adequacy:

1. The class is defined as:

All persons or entities in the Commonwealth of Pennsylvania who within 10 years of having previously purchased title insurance in connection with their mortgages or fee interests, refinanced the identical mortgage or fee interest, and were charged a title insurance premium by Chicago Title that did not include the applicable premium discount for title insurance on file with the Pennsylvania Insurance Commissioner.

2. The class numbers in the tens of thousands so joinder is impracticable under Rule 23(a)(1).

3. The questions of law and fact common to the class members include, but are not limited to:

a. Whether Chicago Title and its agents collected premiums exceeding those permitted by the Title Insurance Rating Bureau of Pennsylvania manual;

b. Whether Chicago Title's protocols, oversight, and training of its agents deprived the class of discounted rates;

c. Whether Chicago Title uniformly applied the filed discounted rates;

d. Whether Chicago Title and its agents intentionally or negligently failed to disclose to Cohen and the class their entitlement to the discounted rates for refinanced or reissued lenders' title insurance;

e. Whether Chicago Title and its agents were unjustly enriched by their improper conduct;

f. Whether Chicago Title and its agents should be enjoined from further improper conduct;

g. Whether Cohen and the class have ascertainable damages from Chicago Title's deceptive business practices.

4. Cohen is a person who refinanced her mortgage less than 10 years after her previous financing and was charged a premium

without the filed discount applicable to refinancing; therefore, she is typical of the class.

5. Cohen has no defenses or claims which are antagonistic to the class, and her attorneys are experienced class action counsel.

6. Separate actions by each of the class members would tax the resources of the claimants for small returns and would strain the resources of the courts.

7. With regard to the requirements of Rule 23(b), I find separate actions would risk inconsistent verdicts, but, adjudication as to one class member would fairly dispose of the claims of all class members.

8. Chicago Title and its agents have engaged in conduct, which, if proved, this Court would enjoin.

9. The questions of law and fact predominate over any individual claims of members of the class and a class action is the best means of resolving the dispute.

THEREFORE, it is ORDERED Pearl Cohen is certified as class representative and Richard S. Gordon of Quinn, Gordon & Wolf, Chtd. is appointed Lead Class Counsel. Also appointed Class Counsel are Philip S. Friedman of Friedman Law Offices, PLLC, and David A. Searles and Michael Donovan of Donovan Searle LLC.

It is further ORDERED Defendant's Motion to Stay (Document 37) is GRANTED and all proceedings are STAYED pending the Third Circuit's resolution of *Slapikas v. First American Title Insurance Co.*, No. 07–8017 (3d Cir.2007). The Clerk shall place the above-captioned case in SUSPENSE.