Denise P. EDWARDS, Plaintiff,

v.

THE FIRST AMERICAN
CORPORATION, et
al., Defendants.

No. CV 07–03796 SJO (FFMx).

United States District Court,
C.D. California.

June 6, 2008.

*See also* 251 F.R.D. 449, 2007 WL 5255734.

Cyril V. Smith, Peter N. Nothstein, Zuckerman Spaeder, Baltimore, MD, David Oakley, Edward G. Kramer, The Fair Housing Law Clinic, Cleveland, OH, James W. Spertus, Lawrence C. Jones, James W. Spertus Law Offices, Los Angeles, CA, Martin E. Wolf, Richard S. Gordon, Quinn Gordon & Wolf Chtd., Towson, MD, for Plaintiff.

Bradley A. Benbrook, Charles J. Stevens, Stevens & O'Connell, Sacramento, CA, Charles A. Newman, Douglas W. King, Darci F. Madden, Byran Cave LLP, St. Louis, MO, Brian J. Recor, Gustavo A. Torres, Joel D.

Siegel, Keith D. Klein, Bryan Cave LLP, Santa Monica, CA, for Defendants.

## ORDER DENYING PLAINTIFF'S SECOND MOTION FOR CLASS CERTIFICATION [Docket No. 99]

S. JAMES OTERO, District Judge.

This matter is before the Court on Plaintiff Denise P. Edwards' Motion for Certification of a Tower City Class, filed April 21, 2008. Defendants First American Title Insurance Company ("FATIC") and The First American Corporation ("First American") filed an Opposition, to which Edwards replied. The Court found this matter suitable for disposition without oral argument and vacated the hearing set for May 19, 2008. *See* Fed. R.Civ.P. 78(b). Because the proposed class is not maintainable under Federal Rule of Civil Procedure 23(b)(3), Edwards' Motion is DENIED.

## I. *BACKGROUND*

Edwards purchased a home in Ohio. Her title agency, Tower City Title Agency, LLC ("Tower City"), referred her to FATIC—a wholly-owned subsidiary of First American—for title insurance. (Compl. ¶¶ 20, 25.) Edwards believes this referral was unlawful under the Real Estate Settlement Procedures Act ("RESPA"), which prohibits the exchange of "a thing of value" for title insurance referrals. 12 U.S.C. § 2607. Specifically, Edwards claims that First American purchased 17.5% of Tower City at an inflated price; in exchange, Tower City agreed to refer all future Ohio title insurance business "exclusively" to FATIC. (Compl. ¶¶ 15–16.) Further, Edwards alleges that First American purchased a minority interest in numerous title agencies at an inflated price in exchange for exclusive referrals. (Compl. ¶¶ 3, 21.)

Originally, Edwards moved to certify a class of customers referred to FATIC by any of the nearly 200 title agencies partially owned by First American. (Order of Dec. 10, 2007, at 2.) This Court found that this class was not maintainable under any provision of Rule 23(b). However, the Court also found that "discovery may yield evidence that a smaller class consisting of all consumers referred to FATIC by Tower City is certifiable" and granted Edwards leave to file a second motion for certification limited to this smaller class (Order of Dec. 10, 2007, at 5–6).

Now, Edwards moves for certification of a class limited to consumers referred to FATIC by Tower City (the "Tower City Class").

## II. *DISCUSSION*

Edwards defines the Tower City Class as follows: All consumers who (1) on or after June 12, 2006(2) entered into federally related mortgage loan transactions (3) using Tower City (4) in which a loan document in the loan file included a charge for title insurance issued by FATIC. (Mot. 1–2.) Defendants' current and former executives are excluded from the class. (Mot. 1.)

Rule 23 establishes two sets of requirements for class certification. First, every proposed class action must satisfy the four prerequisites of Rule 23(a). Second, the parties seeking class certification must show that the proposed class is maintainable under Rule 23(b)(1), (2), or (3). *See Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).

### A. *The Tower City Class Meets the Requirements of Rule 23(a).*

Edwards's proposed class must satisfy the four prerequisites of Rule 23(a)—numerosity, commonality, typicality, and adequacy. Defendants argue that the proposed class cannot be certified because Edwards is neither a typical class member nor an adequate representative.[1]

### 1. *Edwards Is a Typical Class Member.*

■ The "claims or defenses of the class representative must be typical of the claims or defenses of the class." Fed.R.Civ.P.

---

1. Defendants concede that the Tower City Class, which includes hundreds of members, is sufficiently numerous, *Consol. Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir.1995) (presuming numerosity for a class with more than 40 members), and meets the relatively "permissive" commonality threshold, *Hanlon v. Chrysler Corp.,* 150 F.3d 1011 (9th Cir.1998).

23(a)(3). The claims of the class representative need not be identical to the claims of other class members, but the class representative "must be part of the class and possess the same interest and suffer the same injury as the class members." *Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 156, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) (internal quotation marks omitted).

■ Defendants argue that Edwards is not typical of three subsets of the Tower City Class: (1) class members who purchased title insurance after November 9, 2006; (2) class members who purchased title insurance for property in states other than Ohio; and (3) class members who suffered an overcharge because of the alleged referral.

Yet, Defendants fail to explain why any of these distinctions between Edwards and a segment of the Tower City Class affects Edwards' and the class member's interests or injuries. For example, Defendants contend that some class members may have suffered a distinct injury by overpaying for their title insurance. Yet, this has no effect on the damages calculation, which compensates for the statutory injury created by RESPA. (*See* Order of Oct. 11, 2007, at 5.)

Edwards is a typical member of the Tower City Class. Like other class members, she was allegedly referred to FATIC from Tower City and could be entitled to three times the amount she paid for title insurance. Edwards has similar interests and injuries as the other class members and she is a member of the class. Although the method by which Edwards was referred to FATIC may differ from some class members, this does not make Edwards less typical.[2]

Accordingly, Edwards is a typical class member.

**2. *Edwards Is an Adequate Class Representative.***

■ The person representing the class must "fairly and adequately ... protect the interests" of all members of the class. Fed. R.Civ.P. 23(a)(4). The representation is adequate if the attorney representing the class is qualified and competent, and the class representatives are not disqualified by interests antagonistic to the remainder of the class. *Lerwill v. Inflight Motion Pictures, Inc.,* 582 F.2d 507, 512 (9th Cir.1978).

Defendants claim Edwards is an inadequate class representative because she allegedly "knows next to nothing about the litigation." (Opp'n 9.) For example, Edwards could not identify the types of motions filed in her case, although she believes that motions have been filed. (Edwards Dep. 66.) Yet, the Ninth Circuit places little importance on the named plaintiff's own legal knowledge and experience. *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,* 244 F.3d 1152, 1162 (9th Cir.2001) ("The record indicates clearly that [the class representative] understands his duties and is currently willing and able to perform them."). The more important considerations are that the plaintiff's counsel provides representation that protects the class interests and the plaintiff understands her duties. *Id.*

Here, Defendants do not question the qualifications and competency of Edwards' counsel. In addition, Edwards' deposition testimony reveals that she sufficiently understands the litigation. Edwards met with her attorneys eleven times to discuss the case, reviewed the complaint prior to filing, and understands the basic theory of the case. (Edwards Dep. 55–56, 61, 66.) Moreover, Edwards understands that she "represent[s]

**2.** Defendants other two arguments highlight facts Edwards would have to prove at trial for the class. First, the parties agree that the agreement governing Edwards' referral was amended on November 9, 2006 so that Tower City no longer referred customers exclusively to FATIC. Edwards believes this amendment was a sham calculated to avoid legal liability. To recover for a large part of the class, Edwards would have to prove her sham theory, even though this theory is irrelevant to her own claim.

Second, the parties agree that homes located in Ohio are subject to a different agreement than homes located outside Ohio (*compare* Jones Decl. Ex. B, *with* Jones Decl. Ex. F). The parties' dispute as to whether the non-Ohio agreement requires exclusive referrals is yet another issue for Edwards to prove at trial unrelated to her claim.

other people...." (Edwards Dep. 23.) "The Rule does not require more." *Las Vegas Sands,* 244 F.3d at 1162.

Accordingly, Edwards is an adequate class representative.

### B. *The Tower City Class Is Not Maintainable Under Rule 23(b).*

Edwards must also show that class action is maintainable under any of three provisions of Rule 23(b). *See Amchem Prods.,* 521 U.S. at 623, 117 S.Ct. 2231. Edwards contends that this class may be certified under Rule 23(b)(3), which authorizes certification if: (1) common questions of fact or law predominate over individual issues; and (2) class action is superior to other methods of adjudication. Defendants contend that significant individual issues of fact preclude a finding of predominance and superiority.

#### 1. *Common Questions of Law or Fact Do Not Predominate.*

■ Predominance is determined not by counting the number of common issues, but by weighing their significance. *Mullen v. Treasure Chest Casino, LLC* 186 F.3d 620, 627 (5th Cir.1999). "Where, after adjudication of the classwide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims, such claims are not suitable for class certification under Rule 23(b)(3)." *Klay v. Humana, Inc.,* 382 F.3d 1241, 1255 (11th Cir.2004).

Here, class action would require "a great deal of individualized proof." *See id.*[3]

##### a. *Class Action Would Require Individualized Inquiries to Determine if a Referral Occurred.*

To obtain damages under RESPA, a class member must have been "referred" to FAT-IC by Tower City. *See* 12 U.S.C. § 2607(a). The definition of the term "referral" introduces a significant individualized issue. A referral is "any oral or written action directed to a person which has the effect of affirmatively influencing the selection by any person of a provider of a settlement service." 24 C.F.R. § 3500.14(f)(1) (emphasis added); *see Gardner v. First Am. Title Ins. Co.,* No. 00–2176, 2003 WL 221844, at *7, 2003 U.S. Dist. LEXIS 1815, at *21 (D.Minn. Jan. 27, 2003) (defining "referral"). Consequently, class action would require proof at trial concerning each class member and whether that class member was affirmatively influenced by Tower City's actions. This proof would involve direct- and cross-examination of each class member. *See Gardner,* 2003 WL 221844, at *7, 2003 U.S. Dist. LEXIS 1815, at *21 ("[T]he Court would have to individually adjudicate whether the use of Defendants['] title services in each of the ... transactions at issue was, in fact, 'affirmatively influenced'....").[4]

This proof is highly individualized.

##### b. *Class Action Would Require Individualized Identification of Class Members and Determination of Damages.*

Two other significant individual issues are identification of the class members and the determination of damages. Should Edwards succeed on her RESPA claim, Defendants are liable for damages to "the person or persons charged for the settlement service." 12 U.S.C. § 2607. Edwards does not contest Defendants' assertion that determining who was charged for each insurance transaction would require individualized proof, instead declaring the claim "a non-issue." Rhetoric aside, Edwards proposes no basis for easily adjudicating that proof.

---

**3.** While Defendants' challenges to Edwards' typicality present individualized facts not common to the class (see supra note 2), these individualized facts can be eliminated by excising from the Tower City Class any consumers who: (1) purchased insurance from FATIC after November 9, 2006; or (2) purchased insurance for property outside of Ohio.

**4.** In addition, a referral may not be unlawful if the relationship between FATIC and Tower City was disclosed to the class member. Tower City argues that each potential class member "should have received a privacy policy that described the affiliation...." (Opp'n 14–15.) Even if, at trial, this policy is proven to be uniform and provide sufficient disclosure, then individualized proof of receipt (or non-receipt) becomes relevant. This proof is also highly individualized.

"[A]nyone who paid for title insurance is a class member, regardless of who is insured by the policy." (Reply 4) (citing *Cohen v. Chi. Title Ins. Co.*, 242 F.R.D. 295, 300 (E.D.Pa.2007).) Yet, there appears to be no simple or common basis for determining who paid and how much. Edwards provides evidence solely on a transactional basis. For each real estate transaction insured by FAT-IC for which Tower City provided settlement services, Edwards introduces documents that identify the buyer and seller of the real estate and how much title insurance cost.

However, these documents do not identify *who paid for that insurance.* In Ohio, the buyer and seller determine who pays for title insurance based on individualized negotiations that vary in terms. (Jones Decl. ¶ 15 (providing evidence based on Jones' 25 years of experience in the title insurance business in Ohio).) The buyer may bear the whole cost, the seller may bear the whole cost, or the buyer and seller may share the cost based on individualized negotiations. Edwards, for example, did not pay the whole premium for either the owner's or lender's policy; by negotiation, the seller paid 37.5% of the premium. (Compl. ¶ 24.)

Significant individualized proof would be required merely to prove membership in the class. If this Court certified the Tower City Class, the parties would have to hale into court all of the buyers and sellers (who likely reside in Ohio) to identify who paid for title insurance. In addition, the buyer and seller may disagree as to who paid how much, requiring the jury to make hundreds of credibility determinations.

Accordingly, common issues do not predominate.

### 2. *Class Action Is Not Superior.*

Even if "there is a common nucleus of fact regarding a defendant's conduct," class action is not superior when "each class member has to litigate numerous and substantial issues to establish his or her right to recover individually...." *Zinser v. Accufix Research*

*Inst. Inc.*, 253 F.3d 1180, 1189 (9th Cir.2001). Because of the numerous individual issues identified in Part II.B.1 of this Order, each class member would have to conduct substantial litigation in addition to the common questions presented by Edwards' claim.[5]

Accordingly, class action is not superior.

### III. *RULING*

Because the proposed class is not maintainable under Rule 23(b)(3), Edwards' Motion for Certification of a Tower City Class is DENIED.

IT IS SO ORDERED.

---

5. Defendants also argue that class action is not superior because: (1) attorney fees give incentive to bring suit despite relatively small damages; and (2) private enforcement of RESPA is unnecessary given the government's ability to enforce RESPA. While these statutory considerations weigh slightly against superiority, they are not necessary to this Court's conclusion.