## Patterson v. Fidelity National Title Insurance Company

*Adrian N. Roe,* for plaintiffs

*Geofrey A. Kahn, Burt M Rublin* and *Evan W. Krick,* for defendants

WETTICK, *J.,* June 24, 2013—Plaintiffs allege that defendant title companies failed to give them and putative class members discounted rates for title insurance as prescribed by sections 5.3 and 5.6 of the Title Insurance Rating Bureau of Pennsylvania ("TIRBOP") Manual, effective prior to 2005. The only remaining claims in this litigation are those raised under the Unfair Trade Practices and Consumer Protection Law ("Consumer Protection Law"), 73 P.S. §§201-1et seq.

Ordinarily, the next step in this litigation would be a ruling on plaintiffs' request to certify these cases as class actions. However, pursuant to a January 21, 2010 stipulation and order, the parties stipulated that this court should interpret the Rate Manual prior to rulings on the motions for class certification.[1]

---

1. Thereafter, this matter was stayed until a final ruling addressing the issue of whether the existence of a statutory remedy under the Title

Pennsylvania law regulates title insurance rates and requires that such rates be filed with and approved by the Pennsylvania Insurance Department. Fidelity and Lawyers Title are members of TIRBOP, which submits joint rate filings to the Department for approval.

Under Section 5.3 of the pre-2005 TIRBOP Manual, a title company may charge only a reissue rate (90% of the basic rate) whenever the property to be insured is identical to or part of a property insured within ten years immediately prior to the date the insured transaction closes:

Section 5.3 REISSUE RATE

A purchaser of a title insurance policy shall be entitled to purchase this coverage at the reissue rate if the real property to be insured is identical to or is part of real property insured 10 years immediately prior to the date the insured transaction closes when evidence of the earlier policy is produced notwithstanding the amount of coverage provided by the prior policy.

Under Section 5.6 of the Manual, the title company may charge only a discounted refinance rate (80% of the reissue rate) if the same property had been insured within three years immediately prior to the date of the insured transaction. This provision reads as follows:

Section 5.6 REFINANCE AND SUBSTITUTION

---

Insurance Act precluded insureds from pursuing common law and other statutory remedies. In *White v. Conestoga Title Ins, Co.*, 53 A.3d 720 (Pa. 2012), the Pennsylvania Supreme Court ruled that the existence of a statutory remedy under the Title Insurance Act did not preclude insureds from pursuing claims under the Consumer Protection Law.

LOANS

> When a refinance or substitution loan is made within 3 years from the date of closing of a previously insured mortgage or fee interest and the premises to be insured are identical to or part of the real property previously insured and there has been no change in the fee simple ownership, the Charge shall be 80% of the reissue rate....

The named plaintiffs were charged and paid the basic rate. They contend that they should have been charged only the reissue rate because the title search conducted for the current transaction shows a recording of a deed to a bona fide purchaser for value or an unsatisfied mortgage to an institutional lender within the last ten years. According to the title companies, on the other hand, this information is woefully inadequate to entitle the purchaser of title insurance to any discounted rate.

It is undisputed that a title company, before issuing title insurance, has information showing whether within the past ten years there is a recorded deed to a bona fide purchaser for value or an unsatisfied mortgage of an institutional lender. However, recordings within the chain of title will not show whether there is title insurance insuring the deed or unsatisfied mortgage.

The evidence which the parties submitted supports a finding that in most instances the bona fide purchasers and institutional lenders obtained title insurance.[2] However,

---

2. In plaintiffs' brief, counsel for plaintiffs stated that the class includes only first mortgages. Plaintiffs are bound by this statement.

the record also shows that in a substantial number of transactions, financial institutions obtaining first mortgages did not require title insurance.

Section 5.3 entitles the purchaser of title insurance to the reissue rate "when evidence of the earlier policy is produced." Pursuant to the January 21, 2010 Stipulation and Order, I am to interpret what is meant by "when evidence of the earlier policy is produced."[3] If I rule that evidence of a recording of a deed or first mortgage appearing in a chain of title during the look-back period is insufficient to satisfy the requirement that "evidence of the earlier policy" be produced, plaintiffs cannot pursue a class action on behalf of purchasers of title insurance who seek a discount rate solely upon a showing of a deed or mortgage in the chain of title within the look-back period. On the other hand, if I find such evidence is sufficient, I will then consider plaintiffs' motion to certify a class consisting of purchasers of title insurance policies where the chain of title shows the recording of a deed or unsatisfied first mortgage within the look-back period.

Both parties agree that there is no Pennsylvania appellate court case law which has construed Section 5.3. Both parties agree that prior to August 1, 2005, there were no regulations or other directives from the Department of Insurance describing what evidence is sufficient to meet the requirement of producing evidence of an earlier policy within the look-back period. However, the parties disagree over whether the court should construe Section 5.3, if

---

3. The parties agreed that Section 5.6 should be interpreted in the same manner as Section 5.3. See transcript of January 17, 2013 argument at 3.

ambiguous, in favor of the purchaser of the title insurance policy or whether Section 5.3 should be governed by the rules of statutory construction.

The plain language of Section 5.3 does not give a clear answer to the question of whether evidence of a deed or mortgage in the chain of title in the look-back period is sufficient evidence to establish eligibility for the discount.

Evidence of a deed or mortgage in the chain of title in the look-back period will support a finding that it is far more likely than not that there was an earlier title insurance policy. Thus, plaintiffs contend that such evidence is sufficient evidence of an earlier policy. Plaintiffs argue that if the plaintiff in a coverage dispute needs only to show that it is more likely than not that the title policy insures the plaintiff's claim, evidence supporting a finding that it is far more likely than not that an earlier policy was issued during the look-back period should be sufficient.

Defendants, on the other hand, contend that evidence of an earlier policy requires specific documentary evidence of an earlier policy. Otherwise, title insurance companies will be required to give discounts where no prior title policy was issued.

Plaintiffs contend that I do not need to address these issues because the question of what constitutes sufficient evidence has been resolved.

Through a letter dated May 10, 2005, TIRBOP requested the Insurance Department to approve various revisions to the Rate Manual with a proposed effective date of August 1, 2005. One revision was proposed-Section 2.8 which

reads as follows:

Sections 5.3, 5.4 and 5.6 of this Manual provide that reduced rates are applicable when evidence of previous insurance is provided within a specified period of time. As evidence of previous insurance, an Insurer shall rely upon:

(a) the recording (within the period of time specified within the applicable Section of the Manual) of either:

(1) a deed to a bona fide purchaser for value, or

(2) an unsatisfied mortgage to an institutional lender; *or in the alternative,*

(b) any of the following documents produced by or on behalf of the purchaser of the title insurance policy:

(1) a copy of the prior policy;

(2) a copy of the marked-up commitment;

(3) a settlement sheet showing payment of a title insurance premium; or

(4) other written evidence acceptable to the Insurer that title insurance coverage was purchased for the property.

(Emphasis added.)

Approval was obtained, and all parties agree that as of August 1, 2005, the evidence which a title insurance company must accept in order for a purchaser to qualify for a reduced rate includes the recording within the look-back period of a deed to a bona fide purchaser for value or an unsatisfied mortgage to an institutional lender. It

is plaintiffs' contention that Section 2.8 was intended to clarify, retroactively, criteria to be used to determine whether a prior policy existed within the look-back period. I disagree.

Defendants correctly state that retroactivity is an exception and not the norm. There is nothing in the language of Section 2.8 which would suggest that it is to be applied retroactively. To the contrary, the request for an effective date of August 1, 2005 is persuasive evidence that Section 2.8 does not reach purchases of title insurance prior to August 1, 2005. Furthermore, for the reasons set forth at pages 24-28 of defendants' Memorandum of Law Addressing Legal Standards Applicable to Rate Manual Interpretation and Appropriate Interpretation of the TIRBOP Rate Manual (docket entry 122), I do not find that TIRBOP intended for Section 2.8 to be applied retroactively.

Prior to August 1, 2005, there was no uniformity among title companies as to the types of evidence title companies must accept in order for the purchaser to receive a discount rate. Some title companies furnished the discount rate where there was evidence of the recording of a deed to a bona fide purchaser or an unsatisfied mortgage to an institutional lender within the look-back period. However, it appears that the majority of purchasers were not given a discount where this was the only evidence of an earlier policy. In fact, while the evidence shows that a substantial majority of the mortgages of record within the look-back period would have been insured, only a small percentage of these purchasers of title insurance received the discount. Consequently, common sense tells me that

the title insurance industry through the TIRBOP was not proposing a revision that would establish noncompliance with Sections 5.3 and 5.6 in most mortgage transactions within the past four years. In other words, in order to rule in plaintiffs' favor, I would need to find that the title companies were proposing a revision that would entitle most purchasers to a refund.

I now consider the requirement that "evidence of an earlier policy [be] produced."

I do not find merit to plaintiffs' contention that if this provision is ambiguous, it should be construed in favor of the purchaser. This is the rule of construction that applies to construing the terms within a contract. This case involves provisions of a Manual approved by the Insurance Department. Once a provision is approved by the Insurance Department, I agree with defendants that the provision should be treated in the same fashion as any directive of the Insurance Department. Where the Insurance Department has not interpreted what it has promulgated, I agree with defendants that the rules of statutory construction should apply.

Defendants contend that the use of the term "produced" imposes requirements on purchasers. According to defendants, the term "produced" would not have been used if recordings in the chain of title during the look-back period were sufficient to meet the requirement of producing sufficient evidence of an earlier policy. I disagree.

If requirements were imposed on the purchaser, Section 5.3 would have said that "when the purchaser

produces evidence of an earlier policy." The phrase "when evidence is produced" does not impose requirements on the purchaser. Furthermore, each title company is required to charge the same rate as other title companies. A construction of Section 5.3 that results in different charges, depending upon whether or not the purchaser comes forward, is inconsistent with the construction of a tariff that produces uniformity.

I next consider what constitutes "evidence of an earlier policy."

Defendants contend that the requirement of "evidence of an earlier policy" must be construed in a fashion that excludes all transactions where there was no title insurance. For example, since title insurance is obtained in perhaps only 80 to 85% of loans secured by a first mortgage, the tariff should not be construed so as to provide discounts for 100% of the purchasers of title insurance. Any proposed interpretation that is over inclusive is a misinterpretation of the tariff.

Plaintiffs, on the other hand, contend that evidentiary requirements for proving the existence of an earlier policy must not operate to exclude most purchasers who are very likely eligible for the discount. A tariff should not be construed in a manner that results in widespread overpayments.[4]

---

4. In *Slapikis v. First America Title Ins. Co.*, 250 F.R.D. 232 (W.D. Pa. 2008), the court discussed the plaintiff's examination of customers who were charged the basic rate to see if a deed of a bona fide purchaser or institutional mortgage was present in the title search for the applicable look-back period. The plaintiff found 723 out of 898 (81%) of the files contained evidence of a prior title insurance policy that would have qualified the buyer for the reissue rate or the refinance rate. However,

There is no merit to defendants' contention that the Insurance Department would never provide discounts through overinclusive criteria. To the contrary, the Insurance Department approved revised Section 2.8 of the Manual, which, in the above illustration, will result in 15 to 20% of purchasers of title insurance receiving a discount to which they are not entitled.

I do not find the use of recorded deeds or first mortgages for establishing eligibility for the discount to be so overinclusive as to be fundamentally unfair. This is the eligibility criteria set forth in Section 2.8(a), which was drafted and proposed by the title insurance companies. Furthermore, the use of this overinclusive eligibility criteria implicitly recognizes that purchasers may not receive the discounts to which they are entitled if they must produce the documents described in Section 2.8(b).

As I previously stated, since I am applying statutory rules of construction in construing Section 5.3, the question is not what TIRBOP intended but, rather, what is the purpose of the tariff.

The purpose of Section 5.3 is to provide discounts whenever there is an earlier policy. Thus, the tariff should not be construed to impose evidentiary requirements that will achieve the opposite result. In other words, the eligibility requirements for the tariff should be based on what the tariff seeks to achieve unless there is clear direction to the contrary. See, for example, the Ohio Rate Manual PR-10 which conditions eligibility as follows: "provided the Insurer is given a copy of the prior policy,

---

only 116 of the 723 had received a discounted rate.

or other information sufficient to enable the Insurer to identify such prior policy upon which reissue is requested, and the amount of the unpaid principal balance secured by the originalloan."[5]

Both parties have cited federal case law and case law of other states. However, this case law seldom addresses the issues that I have addressed.

Many cases relate to class certification which raises issues concerning reliance.

Defendants cite, inter alia, Kentucky case law. *See Scott v. First American Title Ins. Co,* 276 F.R.D. 471 (E.D. Kentucky 2011), where the court did not certify the class because 75% of mortgages were not insured with title insurance; thus, the existence of a mortgage was not a proxy for the existence of title insurance.

In *Madera v. Ameriquest Mortgage Co.*, 586 F.3d 228 (3d Cir. 2009), the court never addressed what is sufficient evidence of the existence of prior title insurance.

In *Slapikis v. First American Title Ins. Co., supra,* 250 F.R.D. at 244, the court deferred decision on the issues of whether deeds or first mortgages in the chain of title within the look-back period are sufficient evidence under Section 5.3 and whether the 2005 Amendment to the Rate Manual is a clarification of the previous requirements or a substantive change.

In *Matter of Coordinated Title Ins. Cases,* 784 N.Y.S.2d

---

5. In *Chesner v. Stewart Title Guar. Co.*, No. 1:06-CV-00476, 2009 WL 585823 (N.D. Ohio, Jan. 9, 2009), the court discusses claims under PR-10.

919 (N.Y. Sup. Ct. 2004) (slip op.), the court permitted the class action to proceed without discussing the language of the Manual.

Plaintiffs cite *Cohen v. Chicago Title Ins. Co*, 242 F.R.D. 295 (E.D. Pa. 2007), which permitted mortgagors who had received the discount rate to bring a class action against a title insurer. The Court stated, with no explanation, that for proof of prior insurance the plaintiff may rely on the standard title search. Later in the case, at *Cohen v. Chicago Title Ins. Co.*, 2013 WL 842706 (E.D. Pa. Mar. 7, 2013), the court decertified the action on the ground that each member of the class would be required to show justifiable reliance.

## CONCLUSION

For the reasons that I have discussed, the purposes of Sections 5.3 and 5.6 (mandating the use of a discount rate whenever there is an earlier policy within the look-back period) will not be achieved unless a purchaser is charged the discount rate whenever the chain of title includes a deed or first mortgage within the look-back period. Thus, I rule that under Section 5.3, the requirement of evidence of an earlier policy is met where within the look-back period in the chain of title there is the recording of a deed to a bona fide purchaser for value or an unsatisfied first mortgage to an institutional lender.

## ORDER OF COURT

On this 24 day of June, 2013, it is hereby ordered, adjudged, and decreed that under Section 5.3 the requirement of evidence of an earlier policy is met where

within the look-back period in the chain of title there is the recording of a deed to a bona fide purchaser for value or an unsatisfied first mortgage to an institutional lender.