NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

BAY AREA INJURY REHAB SPECIALISTS )
HOLDINGS, INC., as assignee of Antonette )
Warren, Glenda Herring, and Cassandra )
Hudson, individually, and on behalf of all )
those similarly situated, )
)
Appellants, )
)
v. ) Case No. 2D14-786
)
UNITED SERVICES AUTOMOBILE )
ASSOCIATION, USAA CASUALTY )
INSURANCE COMPANY, and )
GARRISON PROPERTY AND CASUALTY )
INSURANCE COMPANY, )
)
Appellees. )
_____ )

Opinion filed June 10, 2015.

Appeal from the Circuit Court for
Hillsborough County; Charles Ed
Bergmann, Judge.

David M. Caldevilla and Michael R. Bray of
de la Parte & Gilbert, P.A., Tampa;
J. Daniel Clark of Clark & Martino, P.A.,
Tampa; and Christopher P. Calkin of The
Law Offices of Christopher P. Calkin, P.A.,
Tampa, for Appellants.

Nancy A. Copperthwaite, Marcy Levine
Aldrich, and Ross E. Linzer of Akerman
LLP, Miami; and Leslie E. Joughin III, of
Akerman LLP, Tampa, for Appellees.

LaROSE, Judge.

## I. INTRODUCTION

Bay Area Injury Rehab Specialists Holdings, Inc. (BAIRS), a health care provider, appeals a nonfinal order denying class certification of a putative class of providers who opted out of a prior class action settlement and dismissing claims for declaratory and injunctive relief. We have jurisdiction over class certification and injunction issues. See Fla. Const., art. V, § 4(b)(1); Fla. R. App. P. 9.130(a)(3)(B), and (a)(3)(C)(vi). We lack jurisdiction over the dismissal of the declaratory relief claim. See Fla. R. App. P. 9.130(a)(3); Dep't of Corr. v. Ratliff, 552 So. 2d 302, 303 (Fla. 2d DCA 1989).

In its lawsuit, BAIRS alleged that the insurance companies (collectively referred to as "USAA") routinely rejected valid claims for personal injury protection ("PIP") benefits based on an unlawful requirement that a separate "disclosure and acknowledgement form" ( D&A form) be submitted every time an insured patient received health care services. BAIRS sought declaratory relief (Count I), injunctive relief to compel PIP payments (Count II), and damages (Count III). Further, BAIRS sought to proceed for itself and as representative of opt-out class members from a prior class action settlement involving similar issues. The earlier class action did not assert claims for declaratory or injunctive relief.

For the reasons explained below, we affirm the trial court's order, with one exception; we dismiss the appeal of the order dismissing the declaratory judgment count as from a nonfinal, nonappealable order. See Ratliff, 552 So. 2d at 303.

## II.  BACKGROUND

Before BAIRS sued USAA, Steven E. Goodwiller, M.D., as class representative, sued USAA in south Florida for unpaid PIP benefits.  See § 627.736, Fla. Stat. (2013); Steven E. Goodwiller, M.D., P.A. v. USAA, No. 08-15594 (Fla. 17th Cir. 2009).  Dr. Goodwiller sought monetary relief comparable to what BAIRS would later seek in Count III of its Second Amended Class Action Complaint (the complaint).  In 2009, BAIRS filed its putative class action, alleging that USAA would not pay any PIP claim without a medical bill accompanied by a D&A form.  Because of the similarity of issues, USAA moved to stay the BAIRS lawsuit pending resolution of Goodwiller.  BAIRS agreed.  Thereafter, the Goodwiller trial court approved a class action settlement of Goodwiller.  BAIRS and about 292 class members opted out of that settlement; as a result, they neither shared in the settlement benefits nor were they bound by any adjudications made in the final judgment.  See Fla. R. Civ. P. 1.220(d)(2).  With Goodwiller resolved, the BAIRS lawsuit proceeded.  USAA filed motions directed to the sufficiency of BAIRS' complaint.

As framed by the trial court, USAA's motions presented two issues: "(1) can a proposed class of opt-outs from a previous class action bring a serial class action . . . on the same grounds; and (2) can the proposed class of opt-outs bring a class action for declaratory and injunctive relief in this matter."  Grappling with these issues, the trial court acknowledged that Goodwiller did not involve claims for injunctive or declaratory relief.  The trial court recognized, however, that BAIRS' claim for damages (Count III) was similar to the monetary claims asserted by Dr. Goodwiller.

- 3 -

The trial court concluded that, as a general proposition, BAIRS could seek class action certification for claims not raised in Goodwiller.

Ultimately, the trial court ruled that BAIRS could not represent a class of Goodwiller opt-outs seeking the same form of monetary relief adjudicated in the Goodwiller class settlement. Accordingly, the trial court struck the class allegations in Count III. The trial court stated clearly that BAIRS, as a Goodwiller opt-out, could pursue its damages claims on an individual basis.

The trial court dismissed the declaratory judgment claim raised in Count I, with prejudice. The trial court concluded that there was no bona fide controversy about USAA's ability to condition PIP benefit payments on the submission of a D&A form. The trial court cited to a legion of Florida cases addressing the issue. The trial court opined that this case law and the Goodwiller class settlement mooted the existence of any dispute.

The trial court also concluded that BAIRS could not obtain the injunctive relief sought in Count II. The trial court found that BAIRS could not demonstrate any irreparable harm that could not be remedied by damages. Indeed, by seeking money damages in Count III of its complaint, BAIRS, in the trial court's view, conceded that injunctive relief requiring USAA to make PIP benefit payments was unnecessary. The trial court dismissed Count II, with prejudice.

In dismissing Counts I and II, the trial court also observed that class action status was inappropriate for the declaratory and injunctive relief claims, even if they had not been raised in Goodwiller. As to both counts, the trial court noted that BAIRS, individually and as the putative class representative, sought monetary relief as its

predominant form of relief. Thus, class action status was inappropriate for these claims. See Rollins, Inc. v. Butland, 951 So. 2d 860, 882 (Fla. 2d DCA 2006); Freedom Life Ins. Co. of Am. v. Wallant, 891 So. 2d 1109, 1117 (Fla. 2d DCA 2004).

### III.  CLASS CERTIFICATION

We review the trial court's decision to grant or deny class certification for an abuse of discretion. See Sosa v. Safeway Premium Fin. Co., 73 So. 3d 91, 98 (Fla. 2011).

BAIRS argues that the trial court abused its discretion by striking the class action allegations of its complaint without allowing class discovery. See Fla. R. Civ. P. 1.220(d)(1); Frankel v. City of Miami Beach, 340 So. 2d 463, 469 (Fla. 1976) ("[T]rial courts should reserve ruling on a motion to dismiss until the party seeking to represent or maintain an action against a class has had the opportunity to employ sufficient discovery to ascertain the necessary information that must be plead."); KPMG Peat Marwick LLP v. Barner, 799 So. 2d 308, 309 (Fla. 2d DCA 2001) (noting information needed to satisfy rule 1.220 requirements can be obtained only through discovery); Commonwealth Land Title Ins. Co. v. Higgins, 975 So. 2d 1169, 1175 (Fla. 1st DCA 2008) (stating that trial court must allow sufficiently broad discovery to permit realistic opportunity to meet class certification requirements).  It focuses its argument primarily on Count III, the damages claim.  BAIRS contends that a class of Goodwiller opt-outs will avoid a multiplicity of lawsuits, reduce the expense of litigation, make legal processes more effective and expeditious, and provide a remedy that would not otherwise exist.  BAIRS nods to Frankel, 340 So. 2d at 469, where the supreme court explained:

> In the average class action the information needed to satisfy the requirements of the rule . . . can only be obtained through discovery. Consequently, trial courts should reserve ruling on a motion to dismiss until the party seeking to represent or maintain an action against a class has had the opportunity to employ sufficient discovery to ascertain the necessary information . . . .

USAA correctly observes that this is not "the average class action." And, because the trial court wanted to avoid serial class actions, we cannot say that any amount of class discovery would be relevant to the class action allegations in Count III. BAIRS wants to represent a class of providers who opted-out of the Goodwiller class settlement. When a putative class member opts out of a class, as it is entitled to do, see Fla. R. Civ. P. 1.220(d)(2), it preserves its right to proceed on an individual basis in its own subsequent lawsuit. An opt-out is not bound by the resolution of the underlying class action. In In re Bridgestone/Firestone, Inc., Tires Products, Liability Litigation, 333 F.3d 763, 769 (7th Cir. 2003), the Seventh Circuit held:

> [A] person who opts out receives the right to go it alone, not to launch a competing class action. Preserving the right to litigate individually, as one's own champion, is the point of opting out. The opt-out avoids any risk of the class's loss on the merits and also forswears any opportunity to take advantage of the class's victory.

BAIRS contends that the Supreme Court rejected Bridgestone's reasoning in Smith v. Bayer Corp., 131 S. Ct. 2368, 2380 (2011). Not so. Bayer abrogated only Bridgestone's holding that denial of class certification binds unnamed class members. Bayer, 131 S. Ct. at 2375 n.4. Bayer agreed with In re Bayshore Ford Truck Sales, Inc., 471 F.3d 1233, 1245 (11th Cir. 2006), and In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation, 134 F.3d 133, 141 (3d Cir. 1998), that denial of class certification prevents courts from binding anyone other than the parties before it and does not bind putative class members who cannot be bound when no class is

certified. We find Bridgestone's reasoning compelling and easily applied here: a party who opts out of a class action retains the right to proceed individually, but not to launch a competing class action of opt-outs seeking the same relief resolved on a class basis in a prior lawsuit.

Our supreme court has observed that "[t]he purpose of the class action is to provide litigants who share questions of law and fact with an economically viable means of addressing their needs in court." Johnson v. Plantation Gen. Hosp. Ltd. P'ship, 641 So. 2d 58, 60 (Fla. 1994). But the trial court correctly pointed out that the class action vehicle contemplates *one* case that will confer these perceived benefits upon the class members.

In further support of its argument that a class of opt-outs can be certified, BAIRS points us to Harper v. Trans Union, LLC, No. 04-3510, 2005 WL 697490, at *3 n.3 (E.D. Pa. Mar. 24, 2005). In Harper, the court observed that

> Rule 23 [the federal counterpart to Rule 1.220] does not explicitly bar opt-outs in one class action from bringing a subsequent class action and it may be that allowing the opt-outs here to proceed as a class will further the purposes of Rule 23 (i.e., to provide for judicial economy in the litigation of similar claims).

Id. In this case, the trial court did not ignore the possibility that a second class action of Goodwiller opt-outs might conserve judicial resources. In the end, however, the trial court properly recognized the evil of serial class actions involving similar issues:

> [B]eyond these perceived benefits lay some serious concerns which give the Court great pause. First, no authority provided by BAIRS, nor found by the Court, reveals precisely where these serial class actions would end, if they were allowed. The Court can easily imagine a scenario in which, for example, an original class of 1,000 becomes two classes of 500, becomes four classes of 250, becomes eight classes of 125, and so on until the Court hardly has a situation better than a single class and individual opt-outs.

BAIRS argues that even if that scenario could possibly happen, it would be far superior to have several class actions than to have 1000 identical individual lawsuits clogging the judicial system. The trial court, however, acutely observed that serial class actions would promote a marketplace for competing class actions and erode the benefits of proceeding in a single class action. The underlying lawsuits could proceed ad infinitum. Indeed, these competing class actions would weigh down the mechanism of providing litigants with an economically viable means of addressing their common claims in court through a single representative action. Instead, as the trial court reasoned, litigants may "opt out in favor of a perceived greater benefit in a different, competing class action, leaving remaining litigants in the original class action with fewer members and the high costs and fees associated with class action."

As is apparent from our discussion, a trial court would normally have limited authority to permit a class action of opt-outs. We find it noteworthy that BAIRS did not allege any justification or necessity for its decision to opt out of the Goodwiller class action. Often, parties elect to opt out because their claim for damages has some special component or their case is unique for some reason. Those reasons to opt out are not good grounds to create another class action. When a party's claim is similar to the others in the class, our class-action rules will likely function better if the party has incentives to remain in the class action and, if necessary, object to any proposed settlement. Although we do not hold in this case that a class action of opt-outs is legally impossible, the need for such a class action would seemingly require exceptional circumstance.

The trial court did not abuse its discretion in concluding that serial class actions do not promote the purpose behind class actions. BAIRS cannot proceed on a class action basis with any claims adjudicated in Goodwiller, especially those monetary claims that are the subject of its claims in Count III. BAIRS, of course, may pursue its monetary claims on an individual basis.

IV. INJUNCTIVE RELIEF AND DECLARATORY JUDGMENT

The declaratory relief claim (Count I) and the injunction claim (Count II) purport to assert claims not raised or considered in Goodwiller.

We see no error by the trial court in dismissing the declaratory judgment claim. Its reasoning is sound. However, the portion of the nonfinal order that dismisses Count I is not appealable. See Fla. R. App. P. 9.130(a)(3); Ratliff, 552 So. 2d at 303. Accordingly, we dismiss that portion of the appeal involving Count I.

As for injunctive relief, BAIRS argues that the trial court incorrectly determined that monetary recovery was the predominant issue in this case. Therefore, BAIRS argues that the trial court abused its discretion by striking the class allegations seeking injunctive relief. As we stated in Addison, and as BAIRS agrees, "rule 1.220(b)(2) requires that the party opposing the class has acted or refused to act on grounds applicable to all class members, thereby making final injunctive . . . relief appropriate." City of Tampa v. Addison, 979 So. 2d 246, 251 (Fla. 2d DCA 2007). Nonetheless, we see no error in the trial court characterizing the class claims in Count II as predominantly seeking monetary relief, thus precluding certification of an injunction class. See Fla. R. Civ. P. 1.220(b)(2), (3). Moreover, dismissal of Count II is adequately supported by the trial court's conclusion that BAIRS failed to state a cause of action for injunctive relief.

- 9 -

## V.  CONCLUSION

Having carefully reviewed the record before us, we affirm the trial court's decision regarding class certification.  BAIRS cannot proceed on a class action basis for claims adjudicated in <u>Goodwiller</u> on behalf of a class of <u>Goodwiller</u> opt-outs.  The trial court did not bar BAIRS from seeking class certification of claims arising post-<u>Goodwiller</u>.  Additionally, BAIRS is free to pursue its monetary claims against USAA individually.

We dismiss that portion of the order dismissing the declaratory judgment claims.  In all other respects, we affirm.

Affirmed in part; dismissed in part.


ALTENBERND and NORTHCUTT, JJ., Concur.